**FORD MOTOR CREDIT COMPANY,**
**Appellant,**

v.

**Tanya McDANIEL, Appellee.**

**No. 1697.**

Court of Civil Appeals of Texas,
Corpus Christi.

Feb. 12, 1981.

Rehearing Denied March 5, 1981.

---

Rick Rogers, Porter, Gonzalez & Rogers, Corpus Christi, Randall A. Hopkins, Baker & Botts, Houston, for appellant.

C. M. Henkel, III, Corpus Christi, for appellee.

## OPINION

BISSETT, Justice.

To be determined in this appeal is whether certain provisions in a retail installment contract violated the Texas Consumer Credit Code, Tex.Rev.Civ.Stat.Ann. art. 5069–2.-01 et seq., hereinafter called the "Credit Code."

On April 3, 1976, Tanya McDaniel purchased a new 1976 Dodge Charger from Sharpstown Dodge Sales, financing the purchase by executing an installment contract with the seller. The amount financed was $6,129.75. The finance charge was $1,681.77. The total of payments amounted to $7,811.52, and was payable in forty-eight monthly installments of $162.74 each. The contract was assigned to Ford Motor Credit Company shortly thereafter.

Suit was filed on September 18, 1979, by Ms. McDaniel. She alleged numerous violations of the Texas Consumer Credit Code, the Federal Truth-in-Lending Act and the Federal Reserve Regulation Z. Summary judgment was rendered in favor of Ms. McDaniel, hereinafter called "appellee." Statutory penalties were imposed under the Texas Consumer Credit Code for six violations thereof; recovery was denied for alleged violations of the Federal Truth-in-Lending Act and Federal Reserve Regulation Z.[1] A conventional trial was held on the sole issue of attorney's fees. Subsequently, a final judgment was rendered for a statutory penalty of $3,363.54, as twice the finance charge, and $7,811.52, as a forfeiture of the principal balance due under the contract. In addition, attorney's fees were awarded to appellee. Ford Motor Credit Company, hereinafter called "appellant," appeals.

■ Appellant raises fourteen points of error in which it claims the installment contract did not violate the Credit Code as found by the trial court.[2] We recognize the rule in our consideration of these points that a single violation of the Credit Code is sufficient to trigger a penalty under Chapter 8 of the Credit Code. *Chapman v. Miller*, 575 S.W.2d 581, 583 (Tex.Civ.App.—Beaumont 1978, writ ref'd n. r. e.). This places the burden upon appellant to show this Court that none of the provisions of the Credit Code were violated by the installment contract.

It is undisputed that the document in question was a "Retail Installment Contract" as defined in Article 5069–7.01(e), of the Credit Code. Therefore, the contract must comply with all the provisions of Chapter 7 of the Credit Code, entitled "Motor Vehicle Installment Sales."

## THE WAIVER CLAUSE

The provision of the subject contract containing the waiver clause in dispute is found in Paragraph 19, which, in pertinent part reads:

"... Any personalty in or attached to the property when repossessed may be held by Seller without liability and Buyer shall be deemed to have waived any claim thereto unless written demand by certified mail is made upon Seller within 24 hours after repossession ...."

Appellee asserts that the above-quoted contract language violated Section 7.07(4)[3] of the Credit Code, and constitutes a waiver of her right of action for any illegal act occurring in the repossession of his property if no demand for the personalty is made within 24 hours of repossession. Appellant contends that the above clause merely defines the bailor-bailee relationship which occurs in respect to personalty seized during repossession of a vehicle. Appellant further argues that Section 7.07(4) of the Credit Code does not apply to conduct occurring after repossession, which any unlawful holding of the personalty would involve.

In *Southwestern Inv. Co. v. Mannix*, 557 S.W.2d 755 (Tex.1977), Article 5069–6.05(4) of the Credit Code was held to have been violated by a waiver in the retail installment contract of all rights of action on

---

1. See, *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980).

2. The trial court found that the following provisions of the Credit Code had been violated: §§ 7.03, 7.04, 7.07(1), 7.07(3), and 7.07(6).

3. Article 5069–7.07(4) provides:

"No retail installment contract or retail charge shall:
    (4) Provide for a waiver of the buyer's rights of action against the seller or holder or other person acting therefor for any illegal act committed in the collection of payments under the contract or agreement or in repossession of a motor vehicle."

repossession. The contract language in dispute in *Mannix* provided:

"Nothing shall prevent the Secured Party from removing [the property] from any premises to which same may be attached, upon default or breach of this Retail Installment Contract and Security Agreement or any part thereof, and the Debtor agrees to sustain the cost of repairs, if any, of any physical injury to the real estate caused by such removal."

The Court, in *Mannix*, explained that the above provision would not be enforceable, since it would waive the buyer's cause of action for any tort committed during repossession. The Court noted that the provision, as written, would require the buyer to absorb the costs of repair, even though the repairs resulted from intentional tortious conduct. For these reasons, the contract was held to be in violation of the Credit Code. In doing so, the Court stated:

"The presence of such a clause in a retail installment contract would deceive the very individuals the Legislature intended to protect; namely 'the uneducated, the unsophisticated, the poor and the elderly . . . .' "

The statutory language of Article 5069–6.-05(4), which was found to be violated by the waiver clause in the *Mannix* case, is identical to the statutory language of 5069–7.-07(4), which is the provision of the Code allegedly violated by the waiver clause in the contract before us.

The exact language of the 24 hour waiver clause before this Court was presented for review in *Ford Motor Credit Company v. Cole*, 503 S.W.2d 853 (Tex.Civ.App.—Fort Worth 1973, writ dism'd). The Court held that such contract provisions would not prevent the buyer from maintaining a suit for damages if his property was illegally repossessed. It was stated in the opinion:

"This is so because it would not be permissible to construe the language of the contract to permit Ford Motor Credit to be exempted from liability in the event it should convert unsecured property of its mortgagor. As so construed the contract would be unenforceable as contrary to the public policy of this state."

■ Paragraph 19 of the contract involved in the instant case amounts to a waiver by the buyer of any right of action for *any* acts which occurred during repossession. If no notice is given by the buyer to the seller within 24 hours of repossession, *any* claim to personalty inside or attached to the vehicle is waived. The buyer, here appellee, is forced by the contractual provisions to give up any right of action to the personalty if notice is not given to the seller within 24 hours. Such provision is not only unenforceable as being contrary to the public policy of this State, but is also unenforceable as being contrary to the prohibitions specifically set out in Section 7.07(4) of the Credit Code.

Appellant, in support of its position, argues: 1) the clause merely states the creditor's legal right as a bailee of the personalty upon repossession; 2) the buyer's "right of action" is not waived, merely his claim to the specific personalty in the repossessed automobile is waived; 3) the contract, by the use of the word "deemed," sets up a rebuttable presumption of a waiver instead of an actual waiver; 4) Section 7.07(4) of the Credit Code does not apply to post-repossession conduct.

First, we fail to read the contract provision as merely restating the law of bailment. By the express wording in Paragraph 19 of the contract, the buyer waives his (her) claim to the personalty if proper notice is not given. Such is clearly not the law in a bailor-bailee arrangement. See, e. g., *English v. Dhane*, 156 Tex. 231, 294 S.W.2d 709 (1956). Second, we do not find as significant any difference between the buyer's waiver of his "right of action" and his waiver of any "claim to the property." Any other construction would not be in accord with the Legislative intent to protect the "uneducated, the unsophisticated, the poor and the elderly." Similarly, we find the insertion of the word "deemed" in a contract does not save a contract clause which would otherwise waive a buyer's rights in violation of Article 5069–7.07(4). Since this Court has construed the contract

in issue to provide for a waiver of buyer's rights in the event of an illegal act during repossession, we need not address the post-repossession arguments.

The trial court's finding of a violation of Section 7.07(4) of the Credit Code is upheld. The portion of the trial court's judgment which awarded a penalty of twice the time-price differential as provided in Article 5069–8.01 of the Credit Code must be affirmed.[4]

## THE ACCELERATION CLAUSE

The trial court also awarded the sum of $7,811.52 as a forfeiture of all the principal or principal balance as a penalty under Article 5069–8.02 of the Credit Code. That section of the Credit Code allows, as a penalty, the forfeiture of the principal balance if a person violates the Credit Code by "contracting for, charging or receiving interest, time-price differential or other charges which are in the aggregate in excess of double the total amount of interest, time price differential and other charge authorized . . . ." To uphold the forfeiture of the principal as a penalty under Section 8.02 in this case, we must determine if appellant, in the contract, did, by the charge set out, exceed the authorized rate for a time-price differential. This issue concerns the validity of the acceleration clause in the subject retail installment contract, which, in pertinent part, provided:

"... In the event Buyer defaults ... Seller shall have the right to declare all amounts due or to become due hereunder to be immediately due and payable...."

The trial court held this clause to be in violation of Section 7.03 of the Credit Code,

since it provided for a time-price differential in excess of that allowed by Article 5069–7.03.[5] Appellee asserts that the trial court finding is correct because the above clause allows the seller to collect unearned interest charges upon default. Appellant, on the other hand, contends that it could not collect unearned interest charges under the contract, and that the amount to be collected upon default would be well within the time-price differential allowed by law.

It is the established law of this State that a contract which requires the payment of unearned interest upon default violates the Credit Code. *Smart v. Tower Land and Investment Co.*, 597 S.W.2d 333, 340 (Tex. 1980); *Tanner Development Co. v. Ferguson*, 561 S.W.2d 777 (Tex.1977); *Commercial Credit Corp. v. Chasteen*, 565 S.W.2d 342 (Tex.Civ.App.—Fort Worth 1978, writ ref'd n. r. e.); *Moore v. Sabine National Bank of Port Arthur*, 527 S.W.2d 209 (Tex.Civ.App. —Austin 1975, writ ref'd n. r. e.).

Many cases have interpreted acceleration clauses similar to the one before this Court. In determining whether payment of unearned interest upon default is required by a contract, such determination must be based upon the following well settled rules of construction:

"... The ascertainment of the dominant purpose and intention of the parties embodied in the contract, interpreted as a whole, in the light of the attending circumstances and the governing rules of law which presumptively they intended to observe and obey in making the contract." *Walker v. Temple Trust Co.*, 124 Tex. 575, 80 S.W.2d 935, 936 (Tex.1935).

4. Chapter 8 of the Credit Code, entitled "Penalties," was amended by the 65th Legislature in 1977. The enacting legislation provided that the amendments would apply to all transactions entered into prior to August 31, 1977, as long as an action under the Credit Code was not pending on that date. An exception was made for the penalty provision of Article 5069–8.01(b), which was to apply only to "transactions entered into after June 30, 1976, which have not been corrected as provided in Article 8.01(c)."

The transaction in the present case was entered into on April 3, 1976, before the effective date of the 1977 amendments to Chapter 8. The trial court, therefore, correctly applied the original version of Article 5069–8.01, as enacted in 1967, to award twice the finance charge in the sum of $3,363.54.

5. Section 7.03 sets out the time-price differential which may be charged on motor vehicle installment sales. The rate allowed varies depending upon the age of the vehicle. Both parties agree the maximum time-price differential in this transaction is 13.61%.

To hold the seller of an automobile under a retail installment contract to have violated the usury statute or the time-price differential required by Article 5069–7.03 of the Credit Code, the intent of the parties, as evidenced by the whole contract, must be so clearly and positively expressed as to overcome the presumption that the parties did not intend to collect unearned interest upon default. The contract, to be usurious on its face, or to provide for the payment of unearned interest, must *expressly* entitle the lender, upon the happening of a contingency, to exact interest at a rate greater than that allowed by law. *W. E. Grace Manufacturing Company v. Levin*, 506 S.W.2d 580 (Tex.1974).

In order to hold that appellant in this case violated either the usury statute or the time-price differential required by Article 5069–7.03 of the Credit Code, the intent of the parties, as evidenced by the whole contract, must be clearly and positively expressed so "... as to overcome the presumption that the parties intended to abide by the equitable rule which requires a surrender of unearned interest ..." *Walker v. Temple Trust Co.*, supra, 124 Tex. 575, 80 S.W.2d at page 937.

In examining a contract which, by its terms, is susceptible of more than one reasonable construction, this Court will adopt the construction which comports with legality. *Smart v. Tower Land and Investment Co.*, supra, 597 S.W.2d at pages 340–341. Unless the contract involved in this appeal, by its express and positive terms, evidences an intention which requires a construction that unearned interest was to be collected, we will interpret the contract as not requiring the collection of unearned interest. *Shropshire v. Commerce Farm Credit Co.*, 120 Tex. 400, 39 S.W.2d 11 (Tex. 1931). Such a construction would be in harmony with the presumption that the contracting parties intended to comply with the law. *Wellfare v. Realty Trust Co.*, 85 S.W.2d 1067, 1070 (Tex.Civ.App.—Eastland 1935, writ ref'd).

The details of that portion of the contract now under consideration include the following:

| | | |
|---|---|---|
| (1) Cash Price | | $ 7799.25 |
|     Cash Down Payment | $ 300.00 | |
|     · Trade In (See Opposite) | $ 1400.00 | |
| (2) Total Down Payment | | $ 1700.00 |
| (3) Unpaid Balance of Cash Price | | |
|     (Difference between Items 1 & 2) | | $ 6099.25 |
| (4) Other Charges | | |
|     Optional Insurance | | |
|     (See Opposite) | $ N.A. | |
|     Official Fees | $ N.A. | |
|     Taxes (Not included | | |
|     in Cash Price) | $ N.A. | |
|     License, Title & | | |
|     Registration Fees | $ 30.50 | |
|     Total Other Charges | | $ 30.50 |
| (5) Unpaid Balance—Amount Financed | | |
|     (Sum of Items 3 & 4) | | $ 6129.75 |
| (6) FINANCE CHARGE | | $ 1681.77 |
| (7) ANNUAL PERCENTAGE RATE | 12.25% | |
| (8) Total of Payments (Sum of Items 5 & 6) | | $ 7811.52 |

It is well established by pre-credit code case law that the acceleration clause, "all amounts due or to become due hereunder ....," does not include or provide for the collection of unearned interest. *Southland Life Ins. Co. v. Egan*, 126 Tex. 160, 86 S.W.2d 722, 724 (Tex.1935); *Sinclair v. Mack Trucks, Inc.*, 355 S.W.2d 563, 564 (Tex.Civ.App.—Fort Worth 1962, writ ref'd n. r. e.); *Davis v. Volunteer State Life Ins. Co.*, 135 S.W.2d 588 (Tex.Civ.App.—Texarkana 1940, writ ref'd). The same interpretation has been made by at least two post-credit code cases, to-wit: *Ford Motor Credit Co. v. Long*, 608 S.W.2d 293, 295 (Tex.Civ. App.—Beaumont 1980, appl. for writ pending), and *Tradewinds Ford Sales, Inc. v. Caskey*, 600 S.W.2d 865, 875 (Tex.Civ.App. —Eastland 1980, appl. for writ pending). See also *Mannix*, supra, 557 S.W.2d at pages 764–765.

In the case at bar the contract contained language which, like many other previously decided cases, does not expressly require the payment of unearned interest. After a thorough review of the contract before us in this appeal, we find no language therein which evidences a clear intent to collect unearned interest. We will not infer such an intent in the construction of the contract. Therefore, we hold that no

violation of Art. 5069–7.03 has occurred. In finding that the appellant did not exceed the authorized rate for interest or time-price differential, the award of all the principal or principal balance as a penalty under Article 5069–8.02 of the Credit Code will not be sustained.

We hold that Paragraph 19 of the contract in question violates the provisions of Article 5069–7.07(4) of the Credit Code. We further hold that the contract does not permit appellant, upon default by appellee, to collect unearned interest. We overrule appellant's fourth, fifth, sixth, thirteenth and fourteenth points of error. We sustain appellant's tenth, eleventh and twelfth points of error. It is not necessary that we reach or decide the remaining points of error.

That portion of the judgment of the trial court which awarded appellee the sum of $7,811.52 as a forfeiture of the principal balance due under the contract pursuant to the penalty provisions of Article 5069–8.02 of the Credit Code is reversed and judgment is here rendered that appellee take nothing upon her claim that the contract violated the Credit Code by permitting the collection of unearned interest upon default. The remainder of the judgment is, in all respects, affirmed.

Costs incurred in this appeal are assessed 50% to appellant and 50% to appellee.

The judgment of the trial court is AFFIRMED IN PART and is REVERSED AND RENDERED IN PART.