Alonzo **CARBAJAL,** Appellant,

v.

**FORD MOTOR CREDIT COMPANY,**
Appellee.

No. 13–82–356–CV.

Court of Appeals of Texas,
Corpus Christi.

Sept. 8, 1983.
Rehearing Denied Oct. 6, 1983.

Thomas M. Schumacher, Hector Gonzalez Law Office, Sinton, for appellant.

Rick Rogers, Porter, Gonzalez & Rogers, Corpus Christi, Lee Rosenthal, Randall A. Hopkins, Baker & Botts, Houston, for appellee.

Before BISSETT, UTTER and GONZALEZ, JJ.

## OPINION

BISSETT, Justice.

This is an appeal from a judgment granted against appellant Alonzo Carbajal, in favor of appellee Ford Motor Credit Company (FMCC). Carbajal sued FMCC for alleged violations of the Texas Consumer Credit Code, Article 5069–7.01, et seq., Tex. Civ.Stat.Ann. (Vernon Supp.1982–83), in a retail installment contract that he had signed in connection with the purchase of a motor vehicle. The trial court found no violations of the Code.

Carbajal contracted with Duval Motor Company on April 3, 1976 for the purchase of a new 1976 Ford. Carbajal executed a document entitled Texas Automobile Retail Instalment (sic) Contract, which is a form FMCC contract. The retail contract was subsequently assigned to FMCC. In connection with the purchase of the same motor vehicle, Carbajal executed a document entitled Agreement to Provide Insurance. Suit was initiated on the above mentioned contract on April 3, 1980.

The parties stipulated: 1) as to reasonable attorney's fees; 2) that Carbajal did, in fact, sign a document entitled "AGREEMENT TO PROVIDE INSURANCE," at the time of execution of the retail installment contract; and, 3) that Marcel Greenia was Carbajal's attorney of record until October 8, 1981.

The first issue that must be resolved is whether the suit was filed timely under Art. 5069–8.04(a), wherein it is provided that "actions may be brought within four years from the date of the loan or retail installment transaction. . . ." As the suit was initiated four years to the date after the contract in question was executed, the question becomes, is the suit timely or did the cause of action expire at midnight April 2, 1980? We hold that the action was timely.

Rule 4, Tex.R.Civ.P., provides: "In computing any period of time prescribed or allowed by these rules, by order of court, or by any applicable statute, the day of the act, event, or default after which the designated period of time begins to run is not to be included." "By 'applicable statute' is meant a statute prescribing the time within which an act is to be done in connection

with a civil action wherein the procedure is regulated by statute." *Nunn v. New,* 148 Tex. 443, 226 S.W.2d 116 (1950). Since the day the contract was executed is not counted in determining the expired time, appellant's cause of action was timely filed.

While appellant specifically assigns as error, his contention that "the trial court erred in holding that appellant filed suit against appellee more than four years from the date of the retail installment transaction," we can find nothing in the record which would indicate that the trial judge made such a determination. Accordingly, appellant's fifth point of error is overruled. However, we do address appellant's remaining points of error, recognizing that the cause of action was timely filed.

Appellant's first point of error attacks the constitutionality of Art. 5069–8.01(c), Tex.Rev.Civ.Stat.Ann. (Vernon Supp.1982–83) in that it constitutes an impairment of the obligation of contracts. We have carefully considered this contention and find it to be without merit. Appellant's first point of error is overruled.

Appellant's second and third points of error relate to the inclusion in the retail installment contract of an offensive phrase, and appellee's efforts to cure this defect under Art. 5069–8.01(c). Specifically, appellant complains "the trial court erred in holding that appellee actually discovered, on May 6, 1981, that the language contained in paragraph 19 of the Retail Installment Contract signed by appellant violated TEX. REV.CIV.STAT.ANN. art. 5069–7.07(4)," and that "the trial court erred in holding that appellee sent a correction notice to appellant's attorney within sixty days after appellee actually discovered its violation of TEX.REV.CIV.STAT.ANN. art. 5069–7.-07(4), since the evidence showed that appellee actually discovered said violation more than sixty days before it sent the notice."

The asserted offensive clause, in the contract before us, provides:

"Any personalty in or attached to the Property when repossessed may be held by Seller without liability and Buyer shall be deemed to have waived any claim thereto unless written demand by certified mail is made upon Seller within 24 hours after repossession."

On May 6, 1981, the Texas Supreme Court handed down an opinion in which it found the waiver portion of the above clause to be both violative of public policy and the Texas Consumer Credit Code. *Zapata v. Ford Motor Credit Co.,* 615 S.W.2d 198 (Tex.1981). Prior to this time, a conflict existed among the Courts of Appeals as to the validity of this clause. See *Ford Motor Credit Co. v. Zapata,* 605 S.W.2d 362 (Tex.Civ.App.— Beaumont 1980); *Tradewinds Ford Sales, Inc. v. Caskey,* 600 S.W.2d 865 (Tex.Civ. App.—Eastland 1980) (finding no violation in the clause); *Ford Motor Credit Co. v. McDaniel,* 613 S.W.2d 513 (Tex.Civ.App.— Corpus Christi 1981, writ ref'd n.r.e.); and, *Ford Motor Credit Co. v. Brown,* 613 S.W.2d 521 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.) (finding a violation).

The record reflects that on May 6, 1981, appellee mailed to appellant's attorney of record, Marcel Greenia, a document entitled "CORRECTION NOTICE," which served as notice of the defect in the retail installment contract. Article 5069–8.01, *supra,* provides in pertinent part:

"(c)(1) A person has no liability to an obligor for a violation of this Subtitle or of Chapter 14 of this Title if within 60 days after having actually discovered such violation such person corrects such violation as to such obligor by performing the required duty or act or by refunding any amount in excess of that authorized by law; provided, notice to such obligor of such violation prior to such obligor having given written notice of or having filed an action alleging such violation of this Subtitle or of Chapter 14 of this Title.

As used herein, the term 'actually discovered' shall not be construed, interpreted, or applied in such manner as to refer to the time or date when, through reasonable diligence, an ordinarily prudent person could or should have discovered or known as a matter of law or fact of the violation in question, but such term shall

be construed, interpreted, and applied to refer to the time of the discovery of the violation in fact, provided, however, that the actual discovery of such violation in one transaction may constitute actual discovery of the same violation in other transactions if the violation actually discovered is of such nature that it would necessarily be repeated and would be clearly apparent in such other transactions without the necessity of examining all such other transactions."

Both appellant's second and third points of error concern whether or not the notice sent by appellee, was given within 60 days after appellee *actually* discovered the violation. We hold that it was.

■ It is apparent that prior to the Texas Supreme Court's decision in *Zapata,* a conflict existed in Texas as to the legality of the disputed clause. We cannot now say that an adverse decision by one Court of Appeals served as notice of a violation, when another Court of Appeals had ruled that no violation existed. There exists testimony in the record that FMCC "continuously defended its position that that (sic), the twenty-four hour clause does not violate the provision of the Credit Code." Under the facts presented, we hold that appellee did not have *actual* notice of the defect, prior to the Supreme Court's ruling in *Zapata.* Appellant's second and third points of error are overruled.

Appellant's fourth point of error contends that the contract contained a provision which violated Art. 5069–7.04 by allowing appellee to contract to receive charges in excess of those permitted by the Consumer Credit Code. At issue is a clause in the contract which provides:

"Seller shall have the right to retain all payments made prior to repossession and Buyer shall remain liable for any deficiency."

We feel that this clause must be read in conjunction with clause (14) of the same contract, which provides:

"(14) Prepayment Rebate: Buyer may prepay his obligations under this contract in full at any time prior to maturity of the final instalment (sic) hereunder, and, if he does so, shall receive a rebate of the unearned portion of the Finance Charge computed under the sum of the digits method after first deducting an acquisition fee of $25.00. No rebate will be made if the amount thereof is less than $1.00."

■ Unless the contract involved in this appeal, by its express and positive terms, evidences an intention which requires a construction that unearned interest was to be collected, we will interpret the contract as not requiring the collection of unearned interest. *Shropshire v. Commerce Farm Credit Co.,* 120 Tex. 400, 39 S.W.2d 11 (1931). *Ford Motor Credit Co. v. McDaniel,* 613 S.W.2d 513 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.). The contract before us provides that Seller *shall have the right* to retain the payments made prior to repossession. It also provides that in the event of a prepayment Buyer is entitled to a rebate of the unearned portion of the finance charge. It follows that should a repossession result in a prepayment or even a demand, seller could, under the contract, refund any unearned charges. "In examining a contract, which by its terms, is susceptible of more than one reasonable construction, this Court will adopt the construction which comports with legality." *Ford Motor Credit Co. v. McDaniel,* supra, at 518. Appellant's fourth point of error is overruled.

■ Finally, appellant's sixth point of error contends that the seller failed to provide appellant with a statement which clearly and conspicuously disclosed that physical damage insurance was required. Art. 5069–7.06 provides, in part, that:

"(3) When insurance is required in connection with such a contract or agreement made under this Chapter, the seller or holder shall furnish the borrower a statement which shall clearly and conspicuously state that insurance is required in connection with the contract, and that the buyer shall have the option of furnishing

the required insurance either through existing policies of insurance owned or controlled by him or of procuring and furnishing equivalent insurance coverages through any insurance company authorized to transact business in Texas .... Such statement or statements may be made in conjunction with or as part of the retail installment contract required by Article 7.02 *or may be made in a separate written statement or statements.*" (Emphasis Added).

The contract before us contains a paragraph entitled "OPTIONAL INSURANCE" in large, bold, capital letters, which offers the Buyer physical damage insurance arranged for by the Seller. Also contained under this heading are statements which provide "Physical Damage Insurance is required by this contract ... Buyer may choose the person through whom such insurance is to be obtained, and Buyer shall have the option of furnishing the required insurance through existing policies of insurance owned or controlled by him or obtained by him through any insurance company authorized to transact business in Texas." Additionally, on the back of the contract is a provision which recites:

"Buyer shall obtain and maintain at his own expense for so long as any amount remains unpaid hereunder insurance protecting the interests of Buyer and Seller against loss, damage or destruction of or to the Property in such forms and amounts as Seller may require."

In addressing this exact type of language in another contract, this Court held the requirement of insurance was not clearly and conspicuously set out. *Portland Tradewinds Ford v. Lugo,* 613 S.W.2d 26 (Tex. Civ.App.—Corpus Christi 1981, no writ). In that case, we held that the confusion created by the words "OPTIONAL INSURANCE" was not erased by the subsequent provisions of the contract. *Id.* at 29.

The case before us is distinguishable from *Lugo,* in that here a *second form* was provided to and executed by appellant, which states: "I understand that to provide protection from serious financial loss, should an accident occur, my installment contract requires the vehicle to be continuously covered with insurance against the risks of fire, theft and collision." This second document overcomes any confusion which may have been created by the retail installment contract itself. Appellant's sixth point of error is overruled.

We have examined all of appellant's points of error. They are overruled.

The judgment of the trial court is AFFIRMED.