George V. LEAL, Appellant,

v.

**FORD MOTOR CREDIT COMPANY, Appellee.**

No. 13–83–003–CV.

Court of Appeals of Texas, Corpus Christi.

Aug. 31, 1984.

Rehearing Denied Nov. 1, 1984.

**720**

Thomas M. Schumacher, Corpus Christi, for appellant.

Rick Rogers, Porter, Rogers, Dahlman & Gordon, Corpus Christi, for appellee.

Before NYE, C.J., and YOUNG and UTTER, JJ.

## OPINION

YOUNG, Justice.

This is an appeal from a judgment granted against appellant, George V. Leal, in favor of appellee, Ford Motor Credit Company (FMCC). Appellant sued appellee for alleged violations of the Texas Consumer Credit Code, Article 5069–7.01, et seq., TEX.REV.CIV.STAT.ANN. (Vernon Supp. 1984), in a retail installment contract that he had signed in connection with the purchase of a used motor vehicle. The trial court found no violations of the Code. We affirm.

Appellant contracted with Yates Ford, Inc., on August 11, 1977, for the purchase of a used 1977 Ford Thunderbird. Appellant executed a document entitled "Texas Automobile Retail Instalment (sic) Contract," which is an FMCC form contract. The retail contract was subsequently assigned to FMCC by Yates. In connection with the purchase of the 1977 Thunderbird, appellant executed a document entitled "Agreement to Provide Insurance" which covered the vehicle against risks of fire, theft and collision. Appellant completed making the monthly installment payments six months ahead of schedule. The record does not show that appellant was late on any payments, nor that appellee attempted to repossess the vehicle or accelerate the remaining monthly payments. Appellant did not file suit for actual damages for breach of warranty or dissatisfaction with the vehicle. The suit was filed for statutory penalties based on technical violations of the Texas Consumer Credit Code.

Appellant complains of six points of error which, basically, raise three legal issues. The first issue is whether appellee complied with Art. 5069–8.01(c) in correcting the violation of Art. 5069–7.07(4), TEX. REV.CIV.STAT.ANN. (Vernon Supp.1984) in the retail installment contract, and covers points of error one, two, three, and six.

■ Appellant's first point of error is that appellee could not provide any correction notice of the violation of Art. 5069–7.-07(4) under Art. 5069–8.01(c)(1) because

Art. 5069–8.01(c)(1) is unconstitutional in that it impairs the obligations of parties to a contract. In *Carbajal v. Ford Motor Credit Co.*, 658 S.W.2d 281 (Tex.App.—Corpus Christi 1983, writ dism'd), this Court considered a constitutional attack on the same statute for being an impairment of the obligation of contracts. After careful consideration of that contention, it was found to be without merit and was overruled. This is the same constitutionality question, except for the slightly different contention that the violation cannot be removed by compliance with an unconstitutional provision. We reach the same result as in *Carbajal* by concluding that Art. 5069–8.01(c)(1) is not unconstitutional and, therefore, overrule appellant's first point of error.

■ Appellant's second and third points of error challenge the trial court's findings that appellee actually discovered that language in paragraph 19 of the installment contract violated Art. 5069–7.07(4) on May 6, 1981, and that a correction notice was sent to appellant's attorney within sixty days of the date when appellee actually discovered the violation. These same two points of error were raised in *Carbajal* in almost identical fact situations and overruled by this Court.

The clause in the contract that allegedly violates Art. 5069–7.07(4) provides:

> Any personalty in or attached to the Property when repossessed may be held by Seller without liability and Buyer shall be deemed to have waived any claim thereto unless written demand by certified mail is made upon Seller within 24 hours after repossession.

Art. 5069–7.07(4) provides that no retail installment contract shall:

> (4) Provide for a waiver of the buyer's rights of action against the seller or holder or other person acting therefor for any illegal act committed in the collection of payments under the contract or agreement or in the repossession of a motor vehicle[.]

On May 6, 1981, the Texas Supreme Court in *Zapata v. Ford Motor Credit Company*, 615 S.W.2d 198 (Tex.1981) ruled on conflicting holdings by the Courts of Appeals on whether the clause was a violation of the Texas Consumer Credit Code. It ruled that the waiver clause in a contract that was the same as in our case was in violation of public policy and the Texas Consumer Credit Code. *See Ford Motor Credit Co. v. Zapata*, 605 S.W.2d 362 (Tex. Civ.App.—Beaumont 1980); *Tradewinds Ford Sales, Inc. v. Caskey*, 600 S.W.2d 865 (Tex.Civ.App.—Eastland 1980)[1] (finding no violation in the clause); *Ford Motor Credit Co. v. McDaniel*, 613 S.W.2d 513 (Tex.Civ. App.—Corpus Christi 1981, writ ref'd n.r. e.); and, *Ford Motor Credit Co. v. Brown*, 613 S.W.2d 521 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.) (finding a violation).

In response to that ruling, FMCC almost immediately (May 7, 1981) mailed correction letters to 94,710 Ford credit purchasers in Texas to serve as a notice of the defect in the retail installment contract and a correction of that defect under Art. 5069–8.01(c)(1) which provides that:

> (c)(1) A person has no liability to an obligor for a violation of this Subtitle or of Chapter 14 of this Title if within 60 days after having actually discovered such violation such person corrects such violation as to such obligor by performing the required duty or act or by refunding any amount in excess of that authorized by law; provided, however, that such person gives written notice to such obligor of such violation prior to such obligor having given written notice of or having filed an action alleging such violation of this Subtitle or of Chapter 14 of this Title.

Paragraph (c)(1) also explains the term "actually discovered":

> As used herein, the term "actually discovered" shall not be construed, interpreted, or applied in such manner as to refer to the time or date when, through reasonable diligence, an ordinarily pru-

---

1. Reversed on other grounds, 616 S.W.2d 935 (Tex.1981).

dent person could or should have discovered or known as a matter of law or fact of the violation in question, but such term shall be construed, interpreted, and applied to refer to the time of the discovery of the violation in fact, provided, however, that the actual discovery of such violation in one transaction may constitute actual discovery of the same violation in other transactions if the violation actually discovered is of such nature that it would necessarily be repeated and would be clearly apparent in such other transactions without the necessity of examining all such other transactions.

The only difference between this case and *Carbajal* is that the notice in this case was alleged to have been sent to appellant, rather than an attorney, as in *Carbajal.* The question is when appellee had actual notice of the violation of Art. 5069–7.07(4). As noted in *Carbajal,* at 284, FMCC continuously defended its position that the twenty-four hour clause did not violate the Credit Code up until the Supreme Court's ruling in *Zapata,* and, therefore, did not have actual notice of the defect until, at the earliest, May 6, 1981. The conflicting decisions of Courts of Appeals did not serve as sufficient notice. The fact that appellee's attorney was the attorney of record in those cases before the Courts of Appeal does not alter the determination of when the violation was "actually discovered." Appellant's second and third points of error are overruled.

■ Appellant's sixth point of error is a no evidence or insufficient evidence point that the correction notice was not actually shown to have been mailed to appellant by appellee. In considering a "no evidence" or "insufficient evidence" point of error, we will follow the well-established test set forth in *Glover v. Texas General Indemnity Company,* 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar,* 395 S.W.2d 821 (Tex. 1965); *Allied Finance Company v. Garza,* 626 S.W.2d 120 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.); CALVERT, *No Evidence and Insufficient Evidence Points of Error,* 38 Tex.L.Rev. 361 (1960).

The following findings of fact by the court are relevant:

16. On May 7, 1981, the Defendant, FORD MOTOR CREDIT COMPANY, caused a written correction notice to be sent by United States Mail to the Plaintiff at P.O. Box 2117, Alice, Texas 78332.

17. The address of the Plaintiff shown on the records of Ford Motor Credit Company and on the most recent document in the transaction was P.O. Box 2117, Alice, Texas 78332.

18. The written correction notice, Defendant's Exhibit "4", advised the Plaintiff of the violation of Article 5069–7.-07(4) and that the provision was deleted from the contract.

19. The written correction notices prepared by Ford Motor Credit Company to be mailed to customers of Ford Motor Credit Company, including the Plaintiff herein, were deposited with the United States Postal Service on May 7, 1981.

20. The written correction notice mailed to the plaintiff herein and other customers of Ford Motor Credit Company was mailed within sixty (60) days from the date Ford Motor Credit Company actually discovered the violation of Article 5069–7.07(4).

21. The written correction notice was mailed to the Plaintiff before the Plaintiff gave the Defendant, FORD MOTOR CREDIT COMPANY, written notice of the claimed violation and before the Plaintiff filed his complaint alleging the violation.

FMCC's four Michigan employees (Smith, Meach, Gleason, and Vanstipdonk) testified by deposition of the procedures used to produce the form letters, to prepare and run the mailing list, and to mail the letters under a postal permit. The receipts from the U.S. Postal Service were entered as evidence that the 94,710 correction letters had in fact been mailed on May 7, 1981. While they could not testify about having seen the correct postage placed on a letter addressed to appellant, they could testify that the names and addresses on the com-

puter list had been mailed copies of the correction letter. Appellant's name appeared on that list before and after the letters were mailed. Testimony of a witness from the U.S. Postal Service further substantiated the mailing procedures using a postal permit. Testimony of FMCC's branch office manager in Corpus Christi as to a file copy of the correction letter sent from Michigan and received by the branch office provided further evidence that FMCC had at least attempted to mail the notice to appellant at his last known address.

■ Appellant's arguments are that appellant does not recall ever having received the correction letter. The May 7, 1981, letter was addressed to P.O. Box 2117, Alice, Texas 78332, but appellant had moved in December, 1980 and was no longer receiving mail from that box. Appellant challenged the depositions of the Michigan employees for being hearsay and not falling under the business records exemption under TEX.REV.CIV.STAT.ANN. Art. 3737e (Vernon Supp.1982), repealed effective September 1, 1983:

Section 1. A memorandum or record of an act, event or condition shall, insofar as relevant, be competent evidence of the occurrence of the act or event or the existence of the condition if the judge finds that:

(a) It was made in the regular course of business;

(b) It was the regular course of that business for an employee or representative of such business with personal knowledge of such act, event or condition to make such memorandum or record or to transmit information thereof to be included in such memorandum or record;

(c) it was made at or near the time of the act, event or condition or reasonably soon thereafter.

While none of the four Michigan employees appear to have personal knowledge of the whole operation (the preparation of the list of customers, the preparation of the correction notice, the procedure of addressing the letters, mailing the 94,710 letters by postal permit and forwarding copies to the branch offices), the overall testimony of the four employees taken together establishes the evidence of the mailing of the correction letters as a hearsay exception under Art. 3737e. Therefore, we hold that the evidence was admissible and was sufficient to show that a correction letter had been mailed to appellant at the last known address in accordance with the trial court's findings. Appellant's sixth point of error is overruled.

■ Appellant's fourth point of error is that the trial court erred in not ruling that the contract allowed appellee to receive unearned financial charges and interest in violation of TEX.REV.CIV.STAT.ANN. Art. 5069–7.04 (Vernon Supp.1984). Specifically, appellant is complaining that paragraph 19 on the reverse side of the contract would allow the seller the right to retain all payments made prior to repossession, with the buyer remaining liable for any deficiency.

In *Carbajal*, 658 S.W.2d at 284, a similar clause was alleged to have violated Art. 5069–7.04 in the same way alleged in this point of error. That contract had a prepayment rebate clause (paragraph 14) identical to the contract in our case. This court, in that case, determined that the two paragraphs, 14 and 19, should be read together. The conclusion reached there is the same conclusion we reach in this case:

Unless the contract involved in this appeal, by its express and positive terms, evidences an intention which requires a construction that unearned interest was to be collected, we will interpret the contract as not requiring the collection of unearned interest. *Shropshire v. Commerce Farm Credit Co.* [120 Tex. 400], 39 S.W.2d 11 (1931). *Ford Motor Credit Co. v. McDaniel*, 613 S.W.2d 513 (Tex. Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.). The contract before us provides that Seller shall have the right to retain the payments made prior to repossession. It also provides that in the event of a prepayment Buyer is entitled to a rebate of the unearned portion of the finance

charge. It follows that should a repossession result in a prepayment or even a demand, seller could, under the contract, refund any unearned charges. "In examining a contract, which by its terms, is susceptible of more than one reasonable construction, this Court will adopt the construction which comports with legality." *Ford Motor Credit Co. v. McDaniel,* supra, at 518.

Appellant's fourth point of error is overruled.

■ Appellant's fifth point of error is that the trial court erred in holding that the Seller provided appellant with a statement that clearly and conspicuously disclosed that physical damage insurance was required. Appellant is claiming that, since the notice was not clear and conspicuous, it violated TEX.REV.CIV.STAT.ANN. art 5069–7.06(3) (Vernon Supp.1984) which requires, in part, that:

> (3) When insurance is required in connection with such a contract or agreement made under this Chapter, the seller or holder shall furnish the borrower *a statement which shall clearly and conspicuously state that insurance is required* in connection with the contract, and that the buyer shall have the option of furnishing the required insurance either through existing policies of insurance owned or controlled by him or of procuring and furnishing equivalent insurance coverages through any insurance company authorized to transact business in Texas .... Such statement or statements may be made in conjunction with or as part of the retail installment contract required by Article 7.02 or *may be made in a separate written statement or statements.* (emphasis added)

The following findings of fact apply to this point of error:

> 9. The retail installment contract in question clearly and conspicuously states that physical damage insurance was required.
> 10. The seller, YATES FORD, INC., furnished the Plaintiff a statement which

clearly and conspicuously stated that physical damage insurance was required.

> 11. The Plaintiff knew at the time of the execution of the retail installment contract in question that physical damage insurance was required.
> 12. The Buyer was given the option of furnishing the required insurance through existing policies of insurance owned or controlled by him, or obtained by him through any insurance company authorized to transact business in Texas.

Under article 5069–7.06(3), it is necessary to look at both the retail installment contract and the agreement to provide insurance to determine whether the disclosure that physical damage insurance was required was clearly and conspicuously printed on at least one of them. The disclosure language found in the insurance agreement was in large, bold type and, therefore, was clear and conspicuous under Art. 5069–7.-06(3). Appellant's signature on the Agreement to Provide Insurance also shows that he was aware of the requirement to provide physical damage insurance. The *Carbajal* case held against this same type of point. Appellant complains of the paragraph entitled OPTIONAL INSURANCE and cites *Portland Tradewinds Ford v. Lugo,* 613 S.W.2d 26 (Tex.Civ.App.—Corpus Christi 1981, no writ). The word "Optional" refers to the means by which the required insurance may be provided (through Seller or by a third party) and not whether the insurance will be provided depending on buyer's willingness or discretion. *Carbajal* points out how it and this case are distinguishable from *Lugo:*

> The case before us is distinguishable from Lugo, in that *here a second form was provided to and executed by appellant,* which states: "I understand that to provide protection from serious financial loss, should an accident occur, my installment contract requires the vehicle to be continuously covered with insurance against the risks of fire, theft and collision." This second document overcomes any confusion which may have been created by the retail installment contract

itself. *Carbajal,* at 285. (Emphasis Added)

Appellant's fifth point of error is overruled.

The judgment of the trial court is AFFIRMED.