Julia C. TREVINO, Appellant,

v.

CASTELLOW CHEVROLET–OLDSMOBILE, INC. and General Motors Acceptance Corp., Appellee.

No. 13–83–362–CV.

Court of Appeals of Texas, Corpus Christi.

Nov. 1, 1984.

Rehearing Denied Nov. 29, 1984.

Thomas M. Schumacher, Hector Gonzalez Law Office, Corpus Christi, for appellant.

Andrew J. Lehrman, Corpus Christi, for appellee.

Before NYE, C.J., and KENNEDY and SEERDEN, JJ.

## OPINION

NYE, Chief Justice.

This is an appeal from a judgment granted against appellant, Julia Trevino, in favor of appellees, Castellow Chevrolet-Oldsmobile, Inc. (Castellow) and General Motors Acceptance Corporation (GMAC). Appellant brought suit against appellees, alleging violations of the Texas Consumer Credit Code, Article 5069-7.01, et seq., TEX. REV.CIV.STAT.ANN. (Vernon Supp.1984), arising out of a retail installment contract that she signed in connection with the purchase of a motor vehicle. The trial court found no violations of the Credit Code. We affirm.

Appellant contracted with appellee Castellow on May 9, 1978, for the purchase of a new 1978 Chevrolet pickup. The vehicle was purchased for personal use and not for resale. Appellant executed a retail installment contract with Castellow whereby she was scheduled to make 42 monthly installment payments, beginning on June 24, 1978. The contract, which was a 1977 GMAC form contract, also provided that a finance charge would be added to the purchase price and that other terms and conditions would apply. Appellant completed making the monthly payments on the contract to GMAC without default. Appellees never attempted to repossess the vehicle. Appellant's suit was brought for statutory penalties for alleged technical violations of the Credit Code.

■ Appellant's third point of error is that the trial court erred in holding that appellant filed suit against appellees more than four years from the date of the retail installment transaction. Article 5069-8.04 sets out the applicable limitation period for suits to be brought under the Credit Code. Effective August 31, 1977, § 8.04 was amended to read:

(a) ... *Such actions may be brought within four years from the date of the loan or retail installment transaction or* within two years from the date of the occurrence of the violation, whichever is later; ...

It is undisputed that on May 9, 1978, appellant entered into the retail installment transaction made the subject of this suit. Appellant filed suit against appellees for the alleged Credit Code violations on May 10, 1982. Appellees answered with a general denial and also pleaded by way of affirmative defense that appellant's suit was barred by the Statute of Limitations. The trial court found, after rendering judgment in favor of appellees in its Conclusions of Law, that appellant instituted this suit more than four years from the date of her signing the retail installment contract and, thus, her action was barred by the

Statute of Limitations as being in violation of art 5069–8.04.

RULE 4, TEX.R.CIV.P. provides: "In computing any period of time prescribed or allowed by these rules, by order of court, or by any applicable statute, the day of the act, event, or default after which the designated period of time begins to run is not to be included ...." "By 'applicable statute' is meant a statute prescribing the time within which an act is to be done in connection with a civil action wherein the procedure is regulated by statute." *Nunn v. New,* 148 Tex. 443, 226 S.W.2d 116 (1950). Since the day the retail installment contract was executed is not counted in determining the expired time, the last date for appellant to file suit was May 9, 1982. *See Carbajal v. Ford Motor Credit Co.,* 658 S.W.2d 281 (Tex.App.—Corpus Christi 1983, writ dism'd). However, that date fell on a Sunday.

■ TEX.REV.CIV.STAT.ANN. art. 5539d (Vernon Supp.1984) provides that, "if the last day of a limitations period under any statute of limitations falls on a Saturday, Sunday, or a holiday, the period for filing suit is extended to the next day that the offices of the county are open for business." *See also* TEX.R.CIV.P. 4. Appellant's cause of action was timely filed on the following Monday, May 10, 1982. The record shows that the appellant proceeded to trial before the court on her Original Petition. The trial court's erroneous conclusion of law concerning the limitation question was made after the court rendered judgment against appellant and in favor of appellees. As such, the error was harmless.

■ In point of error number one, appellant contends that the trial court erred by not holding that the retail installment contract signed by her contained a provision which violated Article 5069–7.07(3). This article provided, at the time the contract was signed by appellant, as follows:

No retail installment contract ... shall:

(3) authorize the seller or holder or other person acting on his behalf to enter upon the buyer's premises unlawfully or to commit any breach of the peace in the repossession of a motor vehicle.[1]

Appellant objects to the language contained in paragraph 6 of the "Additional Terms" located on the back side of the installment contract, which reads:

... Further, in such event, [ (default) ] seller or any sheriff or other officer of the law may take immediate possession of said property without demand, ... and for this purpose seller may enter upon the premises where said property may be and remove same.

Appellant contends that this provision would give appellees the right to trespass upon appellant's private property, open a locked garage and take the vehicle whenever they decided to repossess the vehicle. We note that appellant testified that, at no time during this transaction or throughout the period that she was making payments on the vehicle, was there an attempt by GMAC to repossess or physically take away her car. Appellees contend that the above-quoted contract language is inserted to regulate the bailor-bailee relationship and defines the rights of the parties therein, citing TEX.BUS. & COM.CODE § 9.503 (Vernon Supp.1984), which reads:

Unless otherwise agreed, a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action.

Although appellant executed the retail installment contract now before us prior to the time Art. 5069–7.07(3) was amended to specifically refer to Chapter 9 of the Texas Business and Commerce Code, we are guid-

---

1. Effective August 27, 1979, this provision reads: (3) Authorize the seller or holder or other person acting on his behalf to enter upon the buyer's premises in violation of Chapter 9, Business and Commerce Code, as amended, or to commit any breach of the peace in the repossession of a motor vehicle; ....

ed by the Code provision (§ 9.503) in addressing appellant's point of error.

The Dallas Court, interpreting an identical GMAC contract provision and discussing the same issue that appellant asserts herein, found that the contract provision did not authorize illegal acts of repossession of the vehicle on the part of the vendor. *Martens v. General Motors Acceptance Corp.*, 584 S.W.2d 941 (Tex.Civ.App. —Dallas 1979, no writ). The Dallas Court stated:

> The provision that "[s]eller may enter upon the premises where said property may be and remove same," does not waive any rights of the buyer. If a breach of peace is committed by the seller, the buyer has an action in tort.

*Martens*, 584 S.W. at 943. The Court went on to say:

> We conclude that even if the Code is construed most strongly in favor of the consumer, it does not invalidate any provision of the GMAC contract. No provision of that contract expressly waives any of the buyer's rights of action for illegal acts of the seller during repossession. It is unclear what acts of the seller are intended to be covered by the term "illegal acts." Even if this expression is taken to include negligent acts, this contract cannot reasonably be construed to waive liability for seller's negligent acts. To be effective for that purpose, an express waiver of liability for negligence would be required.

*Martens*, 584 S.W.2d at 944. Although *Martens* involved an alleged violation of art. 5069–7.07(4), we find the reasoning is equally sound when applied to the issues raised here by the appellant.

We must presume that the parties intended an interpretation of the terms that is legal and complies with the Credit Code; and, in reviewing the contract as a whole, we are obligated to adopt a rule of construction which comports with legality and compliance. *Haley v. Pagan Lewis Mo-*

*tors, Inc.*, 647 S.W.2d 319 (Tex.App.—Corpus Christi 1982, writ ref'd. n.r.e.); *Grant v. Friendly Chrysler-Plymouth, Inc.*, 612 S.W.2d 667 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd. n.r.e.).

The Texas Courts have considered similar language authorizing repossession as a contractual limitation; that is, recognizing that public policy favors peaceful, non-trespass repossessions, the terms would allow seller to repossess property only where he found free right of entry. *See Ormsby v. Parker Square Bank*, 610 S.W.2d 246 (Tex. Civ.App.—Fort Worth 1980, no writ); *Charlie Hillard, Inc. v. Heath*, 624 S.W.2d 758 (Tex.App.—Fort Worth 1981, no writ); *Dub Shaw Ford, Inc. v. Jackson*, 622 S.W.2d 664 (Tex.App.—Fort Worth 1981, no writ); and *Woolard v. Texas Motors, Inc.*, 616 S.W.2d 706 (Tex.Civ.App.—Fort Worth 1981, no writ). Appellant's first point of error is overruled.

In point of error number two, appellant contends that the trial court erred by not holding that the retail installment contract violated the Credit Code in that the contract failed to identify the type of coverage provided by the credit accident and health insurance purchased by appellant.

Article 5069–7.06 covers the procurement and sale of insurance in connection with motor vehicle sales. Section 7.06(5) provides that the retail installment contract must identify (1) the type of coverage; (2) the term of the insurance coverage and; (3) the amount of premium for such insurance.[2]

Appellant concedes that in the case at bar, the retail installment contract does, in fact, disclose the term of insurance; i.e. the term commences on the date of the contract and terminates on the scheduled termination date of 12–9–81. It is undisputed that the contract discloses the amount of premiums for such insurance coverages. Under Section 4D of the contract (Costs of Creditor Insurance for the Term hereof), the premium amounts are filled in the

---

**2.** Section 7.06(5) requires these disclosures to be made for the insurance coverages described in Section 7.06(1) (credit insurance) and Section

7.06(2) (property insurance) for which separate charges are included in the retail installment contract.

blanks at $160.55 for the credit life insurance and $292.63 for the credit disability (accident and health) insurance. Appellant signed her name in the space designated as the "Buyer's Approval" to obtain both of the above-indicated creditor insurance.

Appellant admits that the contract does describe the type of coverage provided by the credit life insurance. This disclosure is shown on the face of the contract in the cross-referenced box preceded by the four asterisks and on the reverse side of the contract labeled, "NOTICE OF PROPOSED CREDITOR INSURANCE ON LIFE OF BUYER." Appellant argues, however, that the contract fails to disclose, in detail, the type of coverage provided by the credit accident and health insurance. This contention is without merit.

The trial court filed Findings of Fact which include the following:

15. That at no time during the transaction in question did the Defendants require Plaintiff to provide or obtain credit life, disability or accident and health insurance.

16. That the Retail Installment Contract in question complied with Sec. 7.06(5) by identifying the accident and health insurance coverage provided to Plaintiff.

17. That Julia Trevino admitted she had actual awareness of purchasing credit life and accident and health disability insurance, as well as receiving a copy of the insurance policies.

On review, we will uphold the trial court's findings unless they are manifestly erroneous and without any evidence to support them or are so against the great weight and preponderance of the evidence as to be manifestly wrong. *De La Fuente v. Home Savings Association*, 669 S.W.2d 137, 143 (Tex.App.—Corpus Christi 1984, no writ). Following such guidelines, we find that the retail installment contract complies with all of the disclosure requirements of Art. 5069–7.06(5). Appellant's second ground of error is overruled.

We have also considered appellant's fourth, fifth and sixth points of error, and they are overruled.

The judgment of the trial court is AFFIRMED.