PORTLAND TRADEWINDS FORD and Ford Motor Credit Company, Appellants,

v.

Fernando LUGO, Appellee.

No. 1735.

Court of Civil Appeals of Texas, Corpus Christi.

Feb. 12, 1981.

Rehearing Denied March 5, 1981.

Fredrick F. Rogers, Porter, Gonzalez & Rogers, Corpus Christi, Randall A. Hopkins, Baker & Botts, Houston, Andrew J. Lehrman, Sorrell, Anderson & Sorrell, Corpus Christi, for appellants.

Marcel Greenia, Corpus Christi, for appellee.

1. All subsequent references to the Consumer Credit Code shall be to the sections thereof unless otherwise indicated.

2. Chapter 8 of the Credit Code, entitled "Penalties," was amended by the 65th Legislature in 1977. The enacting legislation provided that the amendments would apply to all transactions entered into prior to August 31, 1977, as long as an action under the Credit Code was

## OPINION

YOUNG, Justice.

Defendants below appeal from an adverse judgment rendered in a suit brought under the Texas Consumer Credit Code, Chapter 7.[1] Plaintiff's motion for partial summary judgment was granted and damages of $2,000.00 were assessed against defendants under the provisions of § 8.01(b) of the Code.[2] After a trial on the issue of attorney's fees, the Court awarded $1,250.00 for the trial alone, interest and court costs. The partial summary judgment was then merged into a final judgment from which this appeal emanates.

A review of the pertinent facts would reflect the following. On June 28, 1977, plaintiff purchased a used 1976 Ford Elite from defendant Portland Tradewinds Ford Sales, Inc., financing the purchase by executing a retail installment contract, which was assigned to defendant Ford Motor Credit Company a few days later. About a year later, plaintiff sued the seller and finance company, asserting that the contract did not comply with several provisions of the Code. After a review of the deposition of plaintiff, the admissions under Texas Rules of Civil Procedure 169, and the exhibits attached to the motion, a summary judgment was granted by the trial court upon violations of the Code in the following respects:

"1. By failing to clearly and/or conspicuously disclose and state that property damage insurance is required in connection with the contract and that said failure constituted a violation of Article 5069–7.06(3); and

2. By failing to disclose to Plaintiff that the property damage insurance sold or procured by Seller was obtained through a Southern County Mutual Insurance

not pending on that date. An exception was made for the penalty provision of Article 5069–8.01(b), which was to apply only to "transactions entered into after June 30, 1976, which have not been corrected as provided in Article 8.01(c)." The contract in this case was entered into on June 28, 1977, after the effective date of the amendments to art. 5069–8.01(b).

Company whose premium or rate of charge is not fixed or approved by the State Board of Insurance, and further by failing to disclose that Plaintiff-Buyer had the option for five (5) days from the date of the contract of furnishing the required insurance coverage through existing policies or of procuring equivalent coverage through any company authorized to transact business in Texas."

Each of these findings is challenged by defendants in this appeal. The burden of proof in a summary judgment proceeding is on the movant, who ". . . must establish his entitlement to a summary judgment on the issues expressly presented to the trial court by conclusively proving all essential elements of his cause of action or defense as a matter of law." *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671 (Tex.Sup.1979). Furthermore, while the non-movant needs no answer or response to the motion, he "must expressly present to the trial court any reasons seeking to avoid movant's entitlement, such as those set out in rules 93 and 94 . . ." *Id.* at 678. In accordance with the above rules, plaintiff, the movant, presented the trial court with summary judgment proof that: 1) the transaction was a retail installment transaction as defined in Chapter 7 of the Credit Code; 2) comprehensive and collision insurance was procured by seller for a twelve month period at a premium of $509.00; 3) said insurance was written by Southern County Mutual Insurance Company, even though the face of the retail installment contract disclosed Insured Lloyd's as the insurance company; 4) the premium or rates of charge of Southern County were not fixed or approved by the Texas Board of Insurance; 5) the appropriate block was not checked to indicate the premium was "not fixed or approved" by the Texas Board of Insurance; 6) that the heading of the paragraph telling the buyer property damage insurance was required read in all capitals "OPTIONAL INSURANCE."

Defendant, the non-movant, raised the affirmative defense that he had sent out a correction letter to plaintiff dated October 26, 1977, that set out a complete defense as allowed by § 8.01(c)(2) of the Credit Code. This section of the Code creates a complete defense for parties such as Ford Credit if they correct any violation of the Credit Code within 60 days after August 31, 1977, "by performing the required duty" if the buyer has not given written notice of the violation or filed an action alleging the violation. In support thereof, defendant presented a copy of the correction letter that was admittedly received by plaintiff. Additionally, defendant challenged the sufficiency of the evidence to support a violation of the Credit Code.

In considering the proof offered, we note that a single violation of the Credit Code is sufficient to trigger the penalty under § 8.01(b). *Chapman v. Miller,* 575 S.W.2d 581 (Tex.Civ.App.—Beaumont 1978, writ ref'd n.r.e.); *Mobile America Sales Corp. v. Rivers,* 556 S.W.2d 378 (Tex.Civ. App.—San Antonio 1977, writ dism'd). Nevertheless, this Court will review both provisions of the Code on which summary judgment was granted by the trial court in favor of the plaintiff.

Art. 5069–7.06(3) of the Credit Code contains two distinct requirements: 1) a statement informing the borrower in a *clear* and *conspicuous* manner that insurance is required and 2) in the event the seller or holder sells insurance to the borrower at a rate or premium not fixed or approved by the State Board of Insurance, then the borrower must be given written notice of same. The first requirement, that of clear and conspicuous disclosure, is met by stating in the contract that insurance is required by the contract.

An examination of the Texas Automobile Retail Installment Contract entered into by the plaintiff in this case reveals that such a statement is not clearly and conspicuously set out. The contract contains a paragraph entitled "OPTIONAL INSURANCE" in large, bold, capital letters, which offers the Buyer physical damage insurance arranged for by the Seller. Also contained in this paragraph is a sentence which at-

tempts to disclose this requirement: "Physical Damage Insurance is required by this contract." Such a disclosure is not sufficient, however, for the reason that the title of the paragraph in bold letters, "OPTIONAL INSURANCE," would lead one to believe that insurance is, in fact, optional.

"Optional," as defined in Webster's dictionary, means "involving an option, not compulsory." "Clear and conspicuous" also have distinct meanings in law. "Clear" has been defined as "obvious; beyond reasonable doubt; perspicuous; plain." (Black's Law Dictionary) "Conspicuous" is defined in the Business and Commerce Code as something written so as to be noticed by a reasonable person. Tex.Bus. & Com.Code § 1.201(10) (1968). "This means that something must appear on the face of the certificate to attract the attention of a reasonable person when he looks at it. (Citations omitted)" *Ling & Co. v. Trinity Savings and Loan Ass'n*, 482 S.W.2d 841, 843 (Tex.Sup. 1972).

By using such a word as "OPTIONAL" in large, bold capitals, the buyer was not clearly and conspicuously informed that insurance was required by law. The use of the words "OPTIONAL INSURANCE" suggests that the buyer need not even buy insurance, or, at least, that he need not read the paragraph that follows if he chose not to purchase insurance from the seller.

Appellants may further contend that a provision on the reverse side of the contract satisfies this requirement of clear and conspicuous disclosure:

> "Buyer shall obtain and maintain at his own expense for so long as any amount remains unpaid hereunder insurance protecting the interests of Buyer and Seller against loss, damage or destruction of or to the Property in such forms and amounts as Seller may require."

Such statement does not erase the confusion created by the use of the words "OPTIONAL INSURANCE" on the front of the contract.

Therefore, we hold that the contract does not clearly and conspicuously state that insurance is required by law pursuant to Art. 5069–7.06(3). We are cognizant of the manner in which this issue was resolved in *Ford Motor Credit Company v. Zapata*, 605 S.W.2d 362 (Tex.Civ.App.—Beaumont 1980, writ granted). We disagree, however, with our colleagues in Beaumont in their findings that the disclosure was in compliance with the Code.

■ Next, we consider the second requirement of § 5069–7.06(3).[3] Defendants do not challenge on appeal the sufficiency of the evidence to support a finding that the premium or rates of charge of the insurance company, either Southern County Mutual Insurance Company or Insured Lloyd's, was not fixed or approved by the Texas Board of Insurance. See *Mobile America Sales Corp. v. Rivers*, supra. Neither do they dispute the finding that the retail installment contract failed to disclose this fact to plaintiff. The retail installment contract, however, does violate section 7.06(3) of the Credit Code by not disclosing, as required, whether the rates of charge were so fixed or approved.

Instead, defendants raise an affirmative defense that any violation was corrected by the letter of October 23, 1977, which reads as follows:

"Dear Customer,

As a result of our review of your account we note the following:

> *If* physical damage insurance written by a county mutual insurance company was included in your agreement, your agreement *may not* have indicated that the rate charged for such insurance was not fixed or approved by the Texas Board of Insurance. The rate for such insurance was not so fixed or approved.

In all other respects, your agreement with us remains as stated. Please keep this notice for your records.

Very truly yours,

Ford Motor Credit Company"

---

**3.** The provision of the Credit Code Article 5069–7.06(3), provides in part:

> "... when any requested or required insurance is sold or procured by the seller or

holder at a premium or rate of charge not fixed or approved by the State Board of Insurance, the seller or holder shall include such fact in the foregoing statement, ..."

The defendants do not contest the fact that they were in violation of the second requirement of Section 7.06(3) of the Credit Code in their retail installment contract. The only remaining issue becomes whether such violation was cured by the "Correction Letter" of October 23, 1977. Defendants contend that the letter was in compliance with Section 8.01(c)(2) of the Credit Code, which provides in part:

> "(2) A person has no liability to an obligor for a violation of this Subtitle or of Chapter 14 of this Title if prior to the effective date of the Act or within (60) days after the effective date of the Act such person corrects such violation . . . ."

In *Ford Motor Credit Company v. Syler*, No. 5426 (Tex.Civ.App.—Eastland, May 22, 1980) (not yet reported), a similar letter sent by defendant Ford Motor Credit Company was held not to have performed "the duty which was required by Article 5069-7.-06(3) of informing Mrs. Syler that the required insurance was sold at 'a premium or rate of charge not fixed or approved by the State Board of Insurance.'" Ford Credit was, therefore, held to be in violation of Section 7.06(3) of the Credit Code, despite the correction letter.

The correction letter in dispute failed to meet the statutory requirements of Section 8.01(c)(2) in several respects. First, the whole letter is couched in conditional terms. By the use of the words "if" and "may not", defendants fail to inform plaintiff, with any certainty, whether defendants failed to comply with the law in his retail installment contract. Such uncertainty in a correction letter does not meet the standards of the Credit Code. Second, a confusion in the designation of the insurer by defendants rendered the correction letter inoperative. The letter advises plaintiff that if a "county mutual insurance company" wrote his insurance policy, then the rate charged was not fixed or approved by the Texas State Board of Insurance. On the face of the retail installment contract, the insurer was designated as "Insured Lloyd's." On the "Application for Insurance", no specific insurer was designated.

Finally, on a memorandum of the coverage afforded, "Southern County Mutual Insurance Company" was named as insurer. The defendants' failure to clearly designate the insurer would confuse even the most knowledgeable buyer. Even defendants were not sure of the insurer, since in an answer to an interrogatory asking the name of the property damage insurance company, they replied, ". . . apparently through Insured Lloyd's and/or Southern County Mutual Insurance Company." This confusion negated any benefit a correction letter sent by defendants would have effected.

For the above reasons, we find the correction letter sent by Ford Motor Credit Company to be insufficient to comply with Section 8.01(c)(2) of the Credit Code. Defendants' violation of the second requirement of Section 7.06(3) of the Code, therefore, was not cured.

Either one of these two violations of the Credit Code is sufficient to affirm the summary judgment of the trial court. It is not necessary for us to decide the other Credit Code alleged violations that were raised by the parties.

The judgment of the trial court is affirmed.