**FORD MOTOR CREDIT COMPANY and Tradewinds Ford Sales, Inc., Appellants,**

v.

**Jose C. SOTO, Appellee.**

**No. 13–83–149–CV.**

Court of Appeals of Texas, Corpus Christi.

April 26, 1984.

Rehearing Denied May 17, 1984.

Michael S. Lee, Porter, Rogers, Dahlman & Gordon, Andrew J. Lehrman, Sorrell, Anderson & Sorrell, Corpus Christi, Lee H. Rosenthal, Houston, for appellants.

C.M. Henkel, III, Corpus Christi, for appellee.

Before NYE, C.J., and UTTER and YOUNG, JJ.

## OPINION

UTTER, Justice.

This is an appeal from a judgment which was based upon an alleged violation of TEX.REV.CIV.STAT.ANN. art. 5069–7.-

06(3) (Vernon Supp.1983) and which awarded to appellee a joint and several recovery of $4,000, plus $1,800 in attorney's fees against Ford Motor Credit Company and $800 in attorney's fees against Tradewinds Ford Sales, Inc., for the trial of the case. The main question presented is whether appellants, as seller or holder, were in violation of Art. 5069–7.06(3) for not making certain disclosures required by Art. 5069–7.06(3) upon the subsequent change of appellee's property damage insurance coverage from a policy for which the rates were fixed or approved by the State Board of Insurance to a policy for which the rates were not fixed or approved.

On July 12, 1980, appellee Jose C. Soto purchased a new 1980 Ford automobile from Tradewinds Ford Sales, Inc., financing the purchase by executing a retail installment contract. The contract required appellee to have physical damage insurance on the automobile that he purchased, and an insurance disclosure statement on the front of the contract so informed appellee, the buyer, that this insurance was required. Appellee made application for insurance through Tradewinds Ford. Based upon the information apparently given by appellee, Tradewinds procured binder coverage through Insured Lloyds on behalf of appellee. At the time of the execution of the contract, the insurance disclosure statement on the retail installment contract correctly reflected that the appellant was insured through Insured Lloyds with binder coverage which was issued at rates fixed or approved by the State Board of Insurance. The contract was subsequently assigned to Ford Motor Credit Company, and appellee was notified of the assignment. After the assignment to Ford Motor Credit Company, insurance broker, Gulf Capital Associates Company, Inc., which had no affiliation with either Tradewinds Ford or Ford Motor Credit, investigated the information provided by appellee upon which the insurance coverage was based. Gulf Capital Associates discovered that appellee had received traffic tickets for moving violations within the three years prior to his application for insurance which made him ineligible for the insurance coverage through Insured Lloyds. However, appellee was eligible for insurance coverage through Southern County Mutual Insurance Company, which insures a higher risk pool and whose rates are not fixed or approved by the State Board of Insurance. In September 1980, Gulf Capital Associates changed appellee's insurance coverage from Insured Lloyds to Southern County Mutual Insurance Company. The change was made retroactive to the date of the original contract. Neither appellant made the specific disclosures to appellee as required under Art. 5069–7.-06(3) upon the change of the insurance coverage. It was disputed whether Tradewinds Ford or Ford Motor Credit did or should have received notice that the policy had been changed from Insured Lloyds to Southern County Mutual Insurance Company.

Appellee made only one payment under the contract which included a premium or charge for the physical damage insurance policy. In November 1980, appellee had an accident in which the automobile was wrecked, and the automobile was later repossessed. Appellee subsequently filed suit, alleging that appellants had violated Art. 5069–7.06(3) in failing to disclose to him that he was insured by Southern County Mutual Insurance Company whose rates were not fixed or approved by the State Board of Insurance.

TEX.REV.CIV.STAT.ANN. art. 5069–7.-06(3) (Vernon Supp.1983) provides:

(3) When insurance is required *in connection with* such a contract or agreement made under this Chapter, the *seller or holder* shall furnish the borrower a statement which shall clearly and conspicuously state that insurance is required *in connection with* the contract, and that the buyer shall have the option of furnishing the required insurance either through existing policies of insurance owned or controlled by him or of procuring and furnishing equivalent insurance coverages through any insurance company authorized to transact business in Texas. In addition when any

requested or required insurance is sold or procured by the *seller or holder* and a premium or rate of charge not fixed or approved by the State Board of Insurance is included in the contract for that insurance, *the seller or holder shall include or cause to be included such fact in a written statement delivered or mailed to the buyer,* and the buyer shall have the option for a period of ten days from the date of the contract or agreement or the mailing or delivery of the written statement to the buyer of furnishing the required insurance coverage either through existing policies of insurance owned or controlled by him or of procuring and furnishing equivalent insurance coverages through any insurance company authorized to transact business in Texas. Such statement or statements may be made *in conjunction with* or *as part of* the retail installment contract required by Article 7.02 or may be made in a separate written statement or statements. (Emphasis supplied)

Appellants basically argue that Art. 5069–7.06(3) does not require that the seller or holder make certain disclosures to a buyer after the retail installment contract is executed and signed and that the disclosure requirements imposed by Art. 5069–7.06(3) must be met by the seller or holder at the time of the execution of the contract and not several months later when the insurance coverage is unilaterally changed without their knowledge or involvement.

Art. 5069–7.06(3) specifically imposes disclosure obligations on a "seller *or* holder" and requires that the disclosures be made "as part of" *or* "in conjunction with" the retail installment contract. By including the words "seller or holder" in the statute, the legislature clearly intended that the disclosure obligations "as part of" or "in conjunction with" such transactions be continuous and ongoing and endure longer than the time of execution of the retail installment contract. Such is consistent with Art. 5069–7.01, et seq., and the general nature of retail installment contract transactions. The clear legislative intent of the statute is to impose certain disclo-

sure requirements on the seller or holder to protect the consumer throughout the entire transaction. Art. 5069–7.06(3) provides that, if the seller or holder requires physical damage insurance in order to finance the sale of a vehicle and if the insurance is "seller-procured" and, if the policy procured has rates not fixed or approved by the State Board of Insurance, then the seller or holder has the duty to clearly and conspicuously disclose to the buyer that he has an opportunity to procure his own policy within ten days. This disclosure requirement was obviously imposed to comport with the legislative intent of the Texas Consumer Credit Code, which, as noted in its Declaration of Legislative Intent, 15 TEX.REV.CIV.STAT.ANN. 1–2 (Vernon 1971), was intended to prevent abusive credit and deceptive trade practices.

As noted in *Southwestern Investment Company v. Mannix,* 557 S.W.2d 755 (Tex. 1977), abuse in the area of insurance requirements in credit transactions has been prevalent in at least two areas in the past: (1) the practice of charging for insurance coverage which the buyer had no notice he was buying; and (2) the practice of requiring insurance and selling it at exorbitant prices without giving the buyer the opportunity to acquire better terms. *Mannix* at p. 769, citing Texas Finance Commission, Report to the 60th Legislature on Consumer Credit Abuses in Texas at pp. 39–41; Davis, *Does the Texas Credit Insurance Act "Legalize" Usury?,* 11 S.W.L.J. 139 (1957).

As applied in this case, the disclosure requirements of Art. 5069–7.06(3) were obviously imposed to protect appellee, the buyer, from having to pay non-fixed or non-approved insurance rates without an opportunity to acquire better terms. Certainly, the legislature could not have intended that this disclosure duty would be eliminated once the retail installment contract had been executed by the buyer and several months later when the insurance coverage was changed from a fixed or approved rate policy to a non-fixed or non-approved rate policy. We believe that the

legislature intended that the protection afforded by such disclosures should be continued upon a change of insurance coverage for whatever reason after the initial procurement of insurance coverage.

Appellant cites two cases, *General Electric Credit Corporation v. Smail*, 584 S.W.2d 690 (Tex.1979) and *Mobile America Sales Corporation v. Rivers*, 556 S.W.2d 378 (Tex.Civ.App.—San Antonio 1977, err. dism'd.), as authority for the proposition that the disclosure requirements are required to be made only at the time that a retail installment contract is actually executed. *Smail* and *Rivers* are factually distinguishable and are inapplicable to the issue before us. The only Texas case that we have found which remotely touches upon the issue under consideration is *Espinoza v. Victoria Bank & Trust Company*, 572 S.W.2d 816 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.). In *Espinoza*, our Court found a violation of Art. 5069-7.06(3) as a result of a failure to make required disclosures at the time of the execution of the retail installment contract. A similar issue raised in that appeal was whether the seller had an obligation to make the required disclosures regarding an insurance policy issued six months after the execution of the contract; however, because of the finding of another violation, that issue was not considered.

We hold that a seller or holder has a continuing duty to make the required disclosures of Art. 5069-7.06(3) wherever there is a subsequent change from a physical damage insurance policy with fixed or approved rates to a physical damage insurance policy with non-fixed or non-approved rates; however, we would limit, in this case, the imposition of that duty only to Ford Motor Credit, the holder, and not Tradewinds Ford, the seller, which was involved in the maintenance of the ongoing transaction at the time of the subsequent policy change. In the instant case, the trial court found: (1) that, subsequent to the assignment to the retail installment contract by Tradewinds Ford to Ford Motor Credit, Tradewinds Ford had no further contact with the insurance company; (2) that the change in insurance company from Insured Lloyds to Southern County Mutual Insurance Company occurred after Tradewinds Ford had assigned the retail installment contract to Ford Motor Credit and after Ford Motor Credit had accepted the assignment of same; (3) that Tradewinds Ford's records showed that it had no knowledge of any insurance change made by Gulf Capital Insurance Company from Insured Lloyds to Southern County Mutual Insurance Company after the retail installment contract was assigned to Ford Motor Credit until Tradewinds Ford received a notice letter from the attorney for appellee in June of 1981; (4) that Tradewinds Ford had no participation in the preparation of any insurance documents including the issuance of insurance policies or the sending of premium notices other than initially placing appellee on binder coverage through Insured Lloyds at the time the retail installment contract was executed; and, (5) that Tradewinds Ford received no notice from Gulf Capital Associates that indicated that the insurance policy was changed to Southern County Mutual Insurance Company. Here, Tradewinds Ford was totally removed from the maintenance of the ongoing, continuing retail installment contract transaction; whereas, Ford Motor Credit Company, as holder, was directly responsible for the maintenance of the ongoing, continuing transaction. We, therefore, hold that Ford Motor Credit, and not Tradewinds Ford, would be liable for a breach of the continuing duty to make the required disclosures under Art. 5069-7.06(3). Appellants' points of error numbers one and two are sustained as to Tradewinds Ford but are overruled as to Ford Motor Credit.

In light of our disposition of the previous points of error in favor of Tradewinds Ford, we will consider the following appellant's points of error as applicable only to Ford Motor Credit.

In its third, fourth and fifth points of error, appellant Ford Motor Credit argues that, even if the disclosure duty imposed by the statutory language at issue is a con-

tinuing one, there is, nonetheless, no violation of the statute because (1) the only insurance procured by the seller and assigned to holder in this case was the Insured Lloyds' binder coverage which was issued at rates that were fixed or approved by the State Board of Insurance and for which the appropriate disclosures were made, and the insurance policy subsequently obtained from Southern County Mutual Insurance Company was procured by Gulf Capital Associates, an independent insurance broker, and not by the holder (Ford Motor Credit); (2) the change in insurance from Insured Lloyds to Southern County Mutual Company which was made without the knowledge, participation or involvement of the holder does not make the new insurance coverage "seller-procured" or "holder-procured" as required for imposition of the disclosure duty under Art. 5069–7.06(3), but rather the new policy was "third party (Gulf Capital Associates, an independent insurance broker) procured"; and, (3) there was no evidence that his insurance at issue was procured by appellant, but to the contrary, the only evidence that the Southern County Mutual Insurance Policy was procured by Gulf Capital Associates with notice to appellee but without notice to Ford Motor Credit.

This Court has previously discussed the difference between "seller-procured insurance" or "holder-procured insurance" and "buyer-procured insurance" in *Espinoza.* In adopting the Texas Supreme Court's discussion in *Southwestern Investment Company v. Mannix,* 557 S.W.2d 755 (Tex. 1977), our Court in *Espinoza* stated:

> In *Mannix,* the Court distinguishes between "seller-procured insurance" and "buyer-procured insurance" in these words:
>
> "... However, this Court construes the term 'seller-procured insurance' to include any insurance coverage whereby the seller becomes *involved in the insurance acquisition process or directly or indirectly benefits from such insurance coverage.* This involvement may be accomplished by actual sales of insurance policies, refer-

rals to insurance agencies, receipts of direct or hidden commissions, financings of insurance purchases from other sources, or by other similar devices. *Only that insurance obtained totally independent of the seller and from which the seller will obtain no direct or indirect benefit from the procuring of the required insurance shall be considered 'buyer-provided.'* "

The Supreme Court further noted that "seller" and "seller-procured" includes "holder" and "holder-procured." See also *Ford Motor Credit Co. v. Blocker,* 558 S.W.2d 493 (Tex.Civ.App.—El Paso 1977, writ ref'd. n.r.e.); *O.R. Mitchell Motors, Inc. v. Bell,* 528 S.W.2d 856 (Tex. Civ.App.—San Antonio 1974, writ ref'd. n.r.e.). *Espinoza* at p. 826. (Emphasis supplied).

█ In the instant case, the evidence presented at trial clearly established that the appellee, as buyer, had absolutely nothing whatsoever to do with the obtaining of the insurance coverage other than submitting his application. Appellant Ford Motor Credit required the insurance coverage under the contract assigned to it and, according to its own testimony, would receive interest from the buyer for the payment of premiums due or paid for by appellant. By allowing Insured Lloyds to have continued to provide binder coverage and by subsequently permitting Gulf Capital Associates to handle appellee's physical damage insurance needs, appellant Ford Motor Credit was "involved in the insurance acquisition process," thus the insurance was "holder-procured" as per *Mannix* and *Espinoza,* thereby invoking the duty to make the required disclosures under Art. 5069–7.06(3). Appellant's third, fourth and fifth points of error are overruled.

█ In its sixth point of error, appellant asserts that the trial court erred in ruling that appellant's violation of Art. 5069–7.06(3) was *not* the result of an accidental and bona fide error because appellant has adopted procedures reasonably designed to avoid such a disclosure require-

ment violation. TEX.REV.CIV.STAT. ANN. art. 5069–8.01(f) (Vernon Supp.1983) provides that there shall be no liability for a violation of the statute if it is shown by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adopted to avoid such violation. To prove the bona fide error defense under Art. 5069–8.01(f), the creditor has the burden to prove (1) the violation was not intentional and resulted from a bona fide error and (2) that the creditor adopted procedures which were designed to avoid and prevent such errors. *Miller v. Soliz*, 648 S.W.2d 734 (Tex.App.—Corpus Christi 1983, no writ); *First Federal Savings and Loan Association of San Antonio v. Bustamante*, 609 S.W.2d 845 (Tex.Civ.App.—San Antonio 1980, no writ). After reviewing the entire record, we hold that appellant failed to meet its burden to sufficiently prove the defense of bona fide error pursuant to Art. 5069–8.01(f) as the evidence presented at trial was insufficient to prove that appellant had adopted procedures reasonably designed to avoid a failure to make the required disclosures upon a subsequent change of insurance coverage from a policy with fixed or approved rates to a policy with non-fixed or non-approved rates. Appellant's sixth point of error is overruled.

Appellee in his cross-point of error alleges that the trial court erred in refusing to admit certain evidence applicable to Tradewinds Ford. We have reviewed the bill of exceptions and find that appellee's line of inquiry was answered in the negative, therefore, the trial court did not err in refusing to admit such testimony. We overrule appellee's cross-point of error.

Judgment of the trial court is AFFIRMED as to Ford Motor Credit Company but is REVERSED AND RENDERED as to Tradewinds Ford Sales, Inc., and that appellee take nothing as against Tradewinds Ford Sales, Inc. All costs are assessed against appellant Ford Motor Credit.