**ALLIED FINANCE COMPANY,**
**Appellant,**

v.

**Ricky RODRIGUEZ, et al., Appellees.**

No. 13–92–415–CV.

Court of Appeals of Texas,
Corpus Christi.

Dec. 16, 1993.

Deborah R. Sundermann, Corpus Christi, for appellant.

Thomas M. Schumacher, Corpus Christi, for appellees.

Before DORSEY, NYE,[1] and GILBERTO HINOJOSA, JJ.

## OPINION

DORSEY, Justice.

This case involves the conspicuousness of insurance provisions in a loan agreement. The trial court found that appellant violated the Consumer Credit Code by failing to clearly and conspicuously disclose to its borrowers that 1) insurance was required on property pledged as security on loans, and 2) that requirement could be satisfied with insurance the borrowers already owned. By

---

1. Former Chief Justice, retired April 30, 1993.

seven points of error, appellant contends that the trial court erred by finding 1) that these insurance provisions were inconspicuous, 2) that any inadequacy in the clarity of the provisions was not the result of bona fide error, and 3) appellees already owned the required insurance. By two cross-points, appellees complain that the trial court erred in finding that Allied was not guilty of usury. We affirm.

The preliminary issue is whether the insurance provisions at issue here were conspicuous. On July 11, 1985, Ricky and Rose Ann Rodriguez, appellees, approached Allied Finance Company, appellant, for a $3,382.26 loan to finance the purchase of a satellite dish. They pledged as collateral on the note a quantity of personal property. Attached to the promissory note and security agreement is a Federal Truth-in-Lending Disclosure Statement. On the bottom one-third of the disclosure statement lies an "Insurance Notice and Application." (See Attached Exhibit).

A portion of the notice and application states that

Household goods property insurance and automobile physical damage insurance are required by Creditor on loans involving a cash advance of $300 or more to insure household goods and motor vehicles, if any, offered as security for this loan. Debtors may obtain such insurance from anyone Debtors want that is acceptable to Creditor, and may be furnished through existing policies of insurance owned or controlled by Debtors. * * * *

Appellees purchased Household Goods Insurance at a cost of $161.03 for $4,464 of insurance for fire, extended coverage, and other perils for the term of the loan, although they already owned applicable insurance. They eventually began making overdue payments on the loan, suffering a monthly service charge.

Appellees filed suit against the finance company alleging violations of the Texas Consumer Credit Code. *See* TEX.REV.CIV. STAT.ANN. art. 5069-2.01, *et seq.* (Vernon 1987 & Supp.1993). Appellees asserted that the company violated section 3.18(3) of the Credit Code by failing to conspicuously state that

insurance was required in connection with the loan and that they could utilize an already existing policy. Appellees also maintained that the company violated sections 3.15 and 3.16 of the Credit Code by contracting for the right to receive interest, in the form of the monthly service charge, in excess of the maximum permitted by law.

After a bench trial, the court entered a final judgment holding that Allied had violated article 5069-3.18(3) by failing to clearly and conspicuously disclose that insurance was required in connection with the loan, and that the plaintiffs could obtain that insurance through existing policies owned or controlled by them or by furnishing equivalent insurance coverage through any insurance company authorized to transact business in the state. The court awarded the plaintiffs below $2,000 as a penalty against Allied for violating the Consumer Credit Code plus $2,000 in attorney's fees and interest as authorized by article 5069-8.01(b) of the Credit Code. The court then entered findings of fact and conclusions of law in response to a request from Allied. The finance company complains of these findings and conclusions, to be enumerated within the discussion.

■ By points one through five, appellant contends that the trial court erred by entering judgment for the appellees because no evidence or insufficient evidence existed to support the court's findings that the insurance disclosure was not clear and conspicuous with regard to three pieces of information: 1) property insurance was required; and 2) the appellees had several options in furnishing the required insurance and thus 3) were not required to purchase the insurance from Allied. The insurance provision at issue is attached to this opinion for the reader's reference during the discussion.

The Credit Code provides:

When insurance is required in connection with a loan made under this Chapter [Regulated Loans], the lender shall furnish the borrower a statement which shall *clearly and conspicuously state* that insurance is required in connection with the loan, and that the borrower shall have the option of furnishing the required insurance

either through existing policies of insurance owned or controlled by him or of procuring and furnishing equivalent insurance coverage through any insurance company authorized to transact business in Texas.

TEX.REV.CIV.STAT.ANN. art. 5069–3.18(3) (Vernon 1987) (emphasis added).

The issue of conspicuousness is a question of law. *See* TEX.BUS. & COM.CODE ANN. § 1.201(10) (Vernon 1968); *Dresser Indus., Inc. v. Page Petroleum, Inc.,* 853 S.W.2d 505, 509 (Tex.1993); *Enserch Corp. v. Parker,* 794 S.W.2d 2, 8 (Tex.1990). We apply the following standard to determine whether a provision is conspicuous:

A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as: NON–NEGOTIABLE BILL OF LADING) is conspicuous. Language in the body of a form is "conspicuous" *if it is in larger or other contrasting type or color.* * * * * (emphasis added).

TEX.BUS. & COM.CODE ANN. § 1.201(10) (Vernon 1968).

The Supreme Court of Texas applies this standard to non-Code cases as well, explaining that "this standard for conspicuousness in Code cases is familiar to the courts of this state and conforms to our objectives of commercial certainty and uniformity." *Page,* 853 S.W.2d at 509 (citing *Cate v. Dover Corp.,* 790 S.W.2d 559, 561 (Tex.1990); *Ling & Co. v. Trinity Savs. & Loan Ass'n,* 482 S.W.2d 841, 843 (Tex.1972)). The law looks with disfavor upon partially concealed or obscured provisions prepared by one party for the purpose of protecting itself and which the other party is not likely to notice. *Ellmer v. Delaware Mini–Computer Sys., Inc.,* 665 S.W.2d 158, 160 (Tex.App.—Dallas 1983, no writ).

We apply this definition of conspicuousness, and better define it, by way of example. The most recent case involving the issue of conspicuousness is the *Page* decision. In that case, the supreme court held that an indemnity agreement was inconspicuous because it was located on the back of the defendants' work orders, hidden in lists of uniformly printed and numbered paragraphs (18 paragraphs on one work order and 9 on the other) without headings or contrasting type. *Page,* 853 S.W.2d at 509.

Similarly, in *Cate,* a disclaimer of implied warranties was contained in an advertisement. It was printed in a blocked section entitled "WARRANTY" in large, bold letters, located on the bottom one-half of the page. The disclaimer itself was printed in a separate paragraph in the "Warranty" area. However, because the clause was printed in the same typeface, size, and color as the remainder of the warranty text, the court found it inconspicuous. *Cate,* 790 S.W.2d at 560. The court held, "Although the warranty in its entirety may be considered conspicuous, the disclaimer is hidden among other attention-getting language purporting to grant the best warranty available." *Id.*

In *Ling,* on the face of a stock certificate read the words, "See reverse side hereof for specific references to provisions setting forth preferences, limitations, and restrictions." Although this single line lay, in a separate paragraph, just above the date and signature lines, the court found it inconspicuous to apprise the holder that transfer restrictions were applicable and were listed on the back of the certificate. *Ling,* 482 S.W.2d at 843.

In *Portland Tradewinds Ford v. Lugo,* 613 S.W.2d 26, 28 (Tex.App.—Corpus Christi 1981, no writ), in which property insurance was required for a retail installment contract, the contract contained a paragraph entitled "OPTIONAL INSURANCE" in large, bold, capital letters. *Id.* Within the paragraph lay the requirement that physical damage insurance was required by the contract. This court held that the terms "optional insurance" would confuse the reader and lead him to believe that the insurance discussed in the paragraph was, in fact, optional. *Id.* at 29. As such, the requirement to purchase property insurance was deemed inconspicuous. *Id.*

Something distinguishing must appear on the face of the document to attract the attention of a reasonable person when he looks at it; for instance, the line of print at issue should stand out. *Ling,* 482 S.W.2d at 843–

44. We held that a disclosure statement identical to the one at bar was indeed conspicuous because it appeared in large, bold letters. *Leal v. Ford Motor Credit Co.,* 683 S.W.2d 719, 724 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.). We also held that the plaintiff's signature on a separate form attached to the retail installment contract entitled "Agreement to Provide Insurance," which also contained these insurance provisions, "shows that he was aware of the requirement to provide physical damage insurance." *Id.* at 724.

In *Juarez v. Bank of Austin,* 659 S.W.2d 139 (Tex.App.—Austin 1983, writ ref'd n.r.e.), the parties entered into a loan agreement, and the plaintiffs sued the bank contending that it failed to conspicuously disclose the requirement to buy property damage insurance. The provision read:

> On a loan having a cash advance of $300.00 or more, insurance on the collateral is required and BORROWER agrees to furnish the following insurance on collateral: (Insurance may be obtained by BORROWER through any person of BORROWER'S choice.) *$100.00 deductible comprehensive and collision Standard Liability*

This clause lay just below the loan statement and the borrower's signature. The portion that is underlined was typed into a previously blank space using a typewriter. The typed portion thus appears in larger print than the pre-printed verbiage. The court held that the larger type clearly and conspicuously disclosed the requirement of physical damage insurance, explaining that one could reasonably expect the reader's attention to be drawn to that language in the contract. *Id.* at 142.

Similarly, we found the requirement of physical damage insurance was clear and conspicuous in *Hernandez v. Forbes Chevrolet Co.,* 680 S.W.2d 75, 79 (Tex.App.—Corpus Christi 1984, dism'd as moot). In *Hernandez,* the insurance was referred to several times on the front page of the installment contact as required, once near the top of the page and in another instance followed by several blanks that were filled in, including the designated insurance company, term of insurance, and choice of policy types. *Id.*

The insurance provisions at issue here are contained on the bottom one-third of a Federal Truth-in-Lending Disclosure Statement attached to the Note and Security Agreement. While the insurance options are contained in a separate box, the area is designated only by the phrase "Insurance Notice and Application" written in capital letters only. The print is not inordinately large, nor is it in bold-face print. Immediately following this is a statement that Credit life, health, and accident insurance are *not* required to obtain credit. Having read this, the borrower could well presume that any additional insurance included in the box was also optional.

The requirement that physical damage insurance be acquired, albeit located in its own paragraph, does not appear in bold print, nor even in capital letters, but remains in the identical typeface as the balance of the insurance section. No blanks to be filled in are located within the paragraph to catch the reader's eye. While appellees' initials appear below the disclosure paragraph at issue, we do not find that their attention would have been drawn to its contents merely because of this. The parties' signatures appear well above the disclosures. With regard to the borrowers' option to purchase insurance from a source other than the lender, and their entitlement to provide insurance already owned by them, this statement is concealed in the middle of the paragraph. It, too, is devoid of unique, eye-catching characteristics.

We hold that the disclosure statements in this loan agreement are not conspicuous. The entire "Insurance Notice and Application" area is typed in identical print. Although blank spaces have been filled in, they are not located in areas that would draw one's attention to the insurance requirement and options as found in other cases in the state. Each case cited by appellant to support its proposition can be readily distinguished, as shown above.

■ Appellant asserts that nevertheless, evidence at trial showed that Mrs. Rodriguez was made aware of the insurance requirement and her options notwithstanding the

adequacy of the loan agreement. Conspicuousness is required in order to protect the buyer from surprise and an unknowing waiver of his or her rights; thus, if the borrower has actual knowledge of those rights, whether the language in the contract is conspicuous is of no moment. *Cate,* 790 S.W.2d at 561–62; *see Ellmer,* 665 S.W.2d at 160.

▮ Mrs. Rodriguez testified she and her husband did not understand that the personal property they listed on Schedule A attached to the note was being held as collateral on the loan. She testified, "We completely misunderstood that, and he didn't tell us very much other than we had to have insurance on the items." Appellant contends that this statement is sufficient to show that appellees were aware of the insurance requirements and options. However, when asked whether the loan officer ever mentioned to her that the couple could procure insurance from any other insurance company they desired, Mrs. Rodriguez replied, "No." She also stated that the couple already owned the necessary insurance on the items, which covered theft and damage.

Moreover, appellant draws our attention to a statement made by Mrs. Rodriguez that the couple had obtained a loan from Allied once before. Appellant contends that this shows the couple knew insurance was required on the collateral. However, Rodriguez testified that the first loan was executed for the purchase of a vacuum cleaner; she did not think she was required to fill out any forms to collateralize the loan. She also stated that the loan papers were filled out by the vacuum cleaner salesman at her home; when she later brought the papers to the bank, the loan officer merely explained the promissory note to her.

Appellees' loan officer, Fabian Garcia, testified that Allied's customers are always informed of the insurance requirement and options for obtaining it. Appellant contends that this proves appellees were made aware of the insurance provisions. Garcia further testified, however, that he does not remember what he said when he closed the appellees' note, because the incident occurred over five years before and he personally closes an average of 10 to 15 loans per week, or 50 to 60 per month.

We find the trial court properly determined that the insurance requirements and options in this loan agreement were not clear and conspicuous and that appellees were not otherwise made aware of them. Points of error one through five are overruled.

▮ By point of error six, appellant complains that the trial court erred by finding that the appellees possessed adequate insurance at the time they agreed to purchase household property insurance from the finance company. Appellant contends that Mrs. Rodriguez was unable to explain the insurance coverage she purportedly owned. Allied asserts that as a result of this, and because a copy of the policy was not introduced into evidence, appellees failed to prove that they owned the required insurance. We disagree.

Mrs. Rodriguez testified that her existing insurance covered "fire, theft, flood, everything" and that State Farm was her insurance carrier. While the policy was not introduced into evidence, the trial court, as the sole trier of fact and the credibility of this witness, was free to believe Rodriguez's assertion that she owned pre-existing insurance for the property in question. A copy of the policy was unnecessary. Appellant also contends that Mrs. Rodriguez failed to indicate that Allied was the payee on the couple's preexisting policy. We fail to find the relevance in this lack of information; the couple was unaware that their pre-existing policy would satisfy the insurance requirement, purchasing a second policy from the finance company and naming it the beneficiary of that coverage. Point of error six is overruled.

▮ By point seven, appellant contends alternatively that any inadequacy in the insurance disclosure statements here was the result of a bona fide mistake. TEX.REV.CIV. STAT.ANN. art. 5069–8.01(f) (Vernon 1987) provides,

(f) A person may not be held liable in any action brought under this Article ... if such person shows by a preponderance of the evidence that (1) the violation was not

intentional and resulted from a bona fide error notwithstanding the maintenance of procedures adopted to avoid such violation. . . .

In *Seitz v. Lamar Savs. Ass'n,* 618 S.W.2d 142, 145–46 (Tex.Civ.App.—Austin 1981, no writ), the Austin court applied the standard set forth in *Mirabal v. General Motors Acceptance Corp.,* 537 F.2d 871, 878 (7th Cir. 1976), *aff'd on other grounds,* 576 F.2d 729 (7th Cir.1978), *cert. denied,* 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 699 (1978). The *Mirabal* case dealt with the statutory defense to the Truth-in-Lending Act, nearly identical to the bona fide error defense asserted here. Both defenses require "procedures designed to avoid and prevent errors which might slip through procedures aimed at good faith compliance. This means that the procedures must contain an extra preventative step, a safety catch or a rechecking mechanism." *Id.* at 145–46. In so doing, it is essential that "the creditor must show that the proper procedures were followed *time in and time out.*" *Id.* The burden remains on the creditor to prove that it has adopted procedures designed to avoid and prevent errors. *Ford Motor Credit v. Soto,* 671 S.W.2d 620, 621 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.).

While Garcia testified that the standard procedure at Allied is to discuss the acquisition of insurance with the borrowers, it is clear from Mrs. Rodriguez's testimony that this procedure was not followed with her. Garcia personally testified that he does not remember following the procedure with Rodriguez. Applying the *Mirabal* standard enunciated above, we conclude from the testimony that Allied did not implement a fail-proof procedure designed to inform borrowers "time in and time out" that they need not purchase that finance company's insurance but may instead purchase it elsewhere or apply their own pre-existing policy. Point of error seven is overruled.

█ By two cross-points, appellees complain of the court's conclusions that: Allied

Finance did not violate article 5069–3.15(5) in its collection of late charges; that Allied Finance did not credit payments made first to outstanding finance charges and second to the scheduled payment; and that Allied Finance did not contract for, charge or receive interest in excess of the maximum permitted.[2]

Appellees contend that they were charged late fees even when only a portion of their scheduled payment was more than ten days late and that such fees violated the terms of their contract. The promissory note executed by the parties provides,

> DEFAULT CHARGES. If any payment or portion thereof continues unpaid for 10 days or more following the date payment is due, Debtor shall pay to Creditor additional interest for default equal to 5 cents for each $1.00 of any scheduled payment so in default. Such default charge shall not be collected more than once on the same payment.

The language in the note tracks that provided in the Consumer Credit Code. Article 5069–3.15(5) directs, in part,

> On any loan contract which includes precomputed interest and is payable in substantially equal successive monthly installments, additional interest for default, if contracted for, may equal but shall not exceed Five Cents for each One Dollar *of any scheduled payment when any portion of such installment* continues unpaid for ten days or more. . . . TEX.REV.CIV.STAT. ANN. art. 5069–3.15(5) (Vernon 1987) (emphasis ours).

We note that the Federal Disclosure Statement attached to the note also states, in a straight-forward manner, *"LATE CHARGE: If a payment is late by more than 10 days, you will be charged 5% of the payment."* Allied's practices comported with the requirements of the Consumer Credit Code. The trial court properly found that Allied did not violate article 5069–8.01(b) by charging interest on the entire monthly scheduled pay-

---

2. Appellees do not denominate these complaints as challenges for legal or factual sufficiency and pray alternatively for rendition or for a new trial. We will treat these complaints as a request that we consider both the legal and factual sufficiency of the evidence to support the court's failure to find in favor of appellees on these points.

ment when in some instances only a portion of that payment was overdue.

Appellees also complain of Allied's alleged practice of "pyramiding" late charges, *i.e.*, applying payments received to late charges first, then to the scheduled installment payment due. In this manner, appellees contend that Allied caused them to be perpetually in default on their loan payments. Appellees maintain that after making a payment in November, a portion of that money was applied to the outstanding October balance, and the rest to the November payment. This left a November balance of $11.58, on which they contend they were assessed a late charge. Allied disputes the imposition of that late charge, stating that no such charge was assessed on the November balance due.

Appellees claim that Allied credited their payments in the manner claimed and that Allied's conduct resulted in a charge of usurious interest. We do not reach the question of whether "pyramiding" of late charges results in usury; the trial court found no "pyramiding." Appellees had the burden of proof below to prove their claim; the evidence at trial was conflicting. The trial judge, when sitting as finder of fact, is the sole judge of the credibility of the witnesses and of the weight to be given their testimony. *Medrano v. Gleinser*, 769 S.W.2d 687, 689 (Tex.App.—Corpus Christi 1989, no writ). We owe deference to the trial court's findings. Appellees established neither proposition (violation of the contract terms or "pyramiding" of late charges) as a matter of law, nor are the findings of the court below so against the great weight and preponderance of the evidence so as to be manifestly unjust and to require reversal. Appellees' cross-points are overruled.

The trial court's judgment is AFFIRMED.

NYE, Former Chief Justice, not participating.