Mary E. TORRES, Appellant,

v.

MID–STATE TRUST II, et al., Appellees.

No. 13–93–612–CV.

Court of Appeals of Texas,
Corpus Christi.

Feb. 28, 1995.

Rehearing Overruled March 30, 1995.

Thomas M. Schumacher, Corpus Christi, for appellant.

M.W. Meredith, Jr., Clay E. Coalson, David A. Sibley, Meredith, Donnell & Abernathy, Corpus Christi, Scott J. Atlas, Stephanie K. Crain, Christopher H. Meakin, Manuel Lopez, Vinson & Elkins, Houston, for appellees.

Before SEERDEN, C.J., and HINOJOSA and CHAVEZ, JJ.

## OPINION

SEERDEN, Chief Justice.

This is a suit for damages under the Texas Consumer Credit Code. Appellant, Mary E.

Torres, sued appellees, Larry Hyden and Mid–State Trust II, based upon an acceleration letter demanding that she pay $445,-580.91 as the unpaid balance on a retail installment contract. Appellees moved for summary judgment on the grounds of *bona fide* error and that Hyden had sent the letter in his capacity as an attorney representing a client. The trial court granted summary judgment favorable to appellees. Appellant appeals by five points of error. We affirm.

Mary E. Torres executed a retail installment contract with Jim Walter Homes, Inc. (Jim Walter). The contract required it to build her a home. As consideration, she had agreed to pay $45,000 financed for 180 months at 10 percent interest. The finance charge was $41,000, "making the total price $86,994." This contract was assigned to Mid–State Trust II (Mid–State).

Torres allegedly fell behind on her payments, and attorney Larry Hyden was retained to collect the account owed to Mid–State. Mid–State and Hyden sent her a letter dated January 12, 1993 (the January letter) which accelerated her indebtedness and demanded $445,580.91 as immediate payment. The letter stated, in part:

> Your accelerated and unpaid balance of all sums lawfully owed is $445,580.91. Said sum, which includes attorney's fees is now due and payable and demand is hereby made for the immediate payment of same. Although said sum should be made payable to Jim Walter Homes, Inc., you should send same directly to me.

On January 26, 1993, Torres filed suit against Mid–State and Hyden, alleging that the $445,580.91 lien exceeded all past due principal and interest and violated Texas Revised Civil Statutes Annotated articles 5069–6.01, *et seq.*, and entitling her to the penalties found in articles 5069–8.01, *et seq.*, including twice the amount of unlawful interest, the principal amount, and reasonable attorneys fees.

Mid–State and Hyden moved for summary judgment on the grounds that the $445,-580.91 figure resulted from a clerical error and that the error fell within the *bona fide* error exception to the Consumer Credit Code. They further contended that Hyden

sent the January letter to her in his capacity as an attorney and had no liability to her because he was "simply a lawyer representing his client."

Appellees' summary judgment proof consisted of the affidavits of Larry Hyden and his secretary, Verna Beard. In his affidavit, Hyden explained the procedures he and his employees consistently followed when representing clients in collection cases. Upon receiving information from a client, an account was established on a data base stored on a computer. His secretary typed the client's information into the data base in various fields; *e.g.*, a "net to close" field. These fields were labeled to identify the information they would use with respect to the correspondence and documentation. After the information was typed into the computer, the information in the data base was checked against the information which the client had provided. After the information typed into the data base was entered and checked, it was used in creating correspondence and documentation. Hyden personally checked for accuracy. After he reviewed and signed the correspondence and documentation, his secretary would mail it. He had used this procedure for several years. It had proven its reliability, and it had consistently produced correspondence and documentation containing accurate information. He further stated that the $445,580.91 figure resulted from a typographical error that occurred when the total amount owed was entered into the data base at the time the file was set up. The error had occurred even though the aforementioned procedures were followed. He stated:

> When my secretary typed the total amount owed into the "net to close" field from the documents sent by my client, a mistake was made in the typing of the account number instead of the dollar amount of the total amount owed into the "net to close" field of the data base. The result was that the total amount owed was shown to be the sum of the account number, the attorney's fees and expenses incurred. Therefore, the $445,580.91 amount referenced in the January 12, 1993 letter, is the sum of the account number,

445,224, attorney's fees of $350.00, postage of $3.16 and photocopies of $3.75 (445,224 + $350.00 + $3.16 + $3.75 = $445,580.91).

When I reviewed and signed the January 12, 1993 letter, I inadvertently did not detect and correct the error in the amount stated as the accelerated balance.

He stated that the $445,580.91 figure resulted from an unintentional, clerical, and *bona fide* error, notwithstanding the procedures designed to prevent that type of an error.

In her affidavit, Verna Beard stated that on January 12, 1993 (the date of the January letter), she had worked as a secretary for Hyden's law firm. She stated that their regular procedure was to type customer-collection information received from their clients into a data base. The data base was stored on a computer. Once the information was entered into the data base, the information in the data base was checked against the information which the client had provided. After the information in the data base was entered and checked, the information was used to create the correspondence and documentation used in debt collection and foreclosure. She had prepared the January letter using information from the data base. The typographical error had occurred in the letter when the information received from the client was initially entered into the data base. The account number was typed by mistake, instead of the dollar amount of the accelerated balance, into the "new to close" field of the data base. The result was that the "total amount owed was shown to be the sum of the account number plus attorney's fees and expenses incurred...." She further stated that the error was unintentional and occurred despite their procedures designed to prevent that type of error.

Appellant filed a response to appellees' motion for summary judgment but did not file any controverting evidence.

The trial court granted summary judgment favorable to appellees and ordered that Torres take nothing.

■ In reviewing a summary judgment record, we must decide whether a disputed material fact issue exists which would preclude a summary judgment. *Gonzalez v. Mission Am. Ins. Co.*, 795 S.W.2d 734, 736 (Tex.1990); *Bayouth v. Lion Oil Co.*, 671 S.W.2d 867, 868 (Tex.1984). We indulge every reasonable inference in the non-movants' favor and resolve any doubt in their favor. *Wilcox v. St. Mary's Univ.*, 531 S.W.2d 589, 593 (Tex.1975). The question on appeal is not whether the summary judgment proof raises a fact issue with respect to essential elements of a plaintiff's claim, but whether the summary judgment proof confirms that the movant is entitled to summary judgment as a matter of law. *Gonzalez*, 795 S.W.2d at 736.

■ By point two, Torres asserts that the trial court erred in granting summary judgment because appellees did not show, as a matter of law, that their "violation" of the Credit Code was a *bona fide* error which had occurred notwithstanding the maintenance of procedures reasonably adopted to avoid the violation.

■ Article 5069–8.01(f) of the Texas Revised Civil Statutes provides, in relevant part, that "[a] person may not be held liable in any action brought under this Article ... if such person shows by a preponderance of evidence that (1) the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adopted to avoid such violation...." TEX.REV.CIV.STAT.ANN. art. 5069–8.01(f) (Vernon 1987). In other words, the *bona fide* error defense requires a creditor to prove (1) that the violation was not intentional and resulted from a *bona fide* error and (2) that the creditor adopted procedures which were designed to avoid and prevent these types of errors. *Ford Motor Credit Co. v. Soto*, 671 S.W.2d 620, 626 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.); *Ballard v. Hillcrest State Bank*, 592 S.W.2d 373, 374 (Tex.Civ.App.—Dallas 1979, writ ref'd n.r.e.).

In *Allied Fin. Co. v. Rodriguez*,[1] this Court applied the standard pronounced in *Mirabal v. General Motors Acceptance*

1. 869 S.W.2d 567 (Tex.App.—Corpus Christi 1993, no writ).

*Corp.*[2] to decide whether a creditor had met the *bona fide* error defense found in article 5069–8.01(f). In *Mirabal,* the 7th U.S. Circuit Court of Appeals considered a statutory defense to liability under the Federal Truth-in-Lending Act, nearly identical to the *bona fide* error defense asserted here. In *Rodriguez,* we stated:

> Both defenses require "procedures designed to avoid and prevent errors which might slip through procedures aimed at good faith compliance. This means that the procedures must contain an extra preventative step, a safety catch or a rechecking mechanism." [citation omitted] In so doing, it is essential that "the creditor must show that the proper procedures were followed *time in and time out.*" [citation omitted] The burden remains on the creditor to prove that it has adopted procedures designed to avoid and prevent errors. [citation omitted]

*Rodriguez,* 869 S.W.2d at 573 (emphasis in original).

In this case, the summary judgment proof showed that Larry Hyden had established reasonable procedures designed to avoid a violation of the Consumer Credit Code and that his procedures included a rechecking mechanism designed to avoid violations. That is, once information was typed into the computer, the information in the data base was checked against the information which his client had provided. After this checking process, the information was used in creating correspondence and documentation. Hyden personally checked for accuracy, and after he reviewed and signed the correspondence and documentation, his secretary mailed it. The evidence further showed that Hyden and his employees "consistently followed" (time in and time out) these procedures when representing clients in collection cases. The $445,-580.91 figure resulted from an unintentional, typographical error that occurred when the total amount owed was entered into the data base, even though Hyden's procedures were followed.

We hold that the summary judgment proof showed that the violation was not intentional and resulted from *bona fide* error notwithstanding the maintenance of procedures reasonably adopted to avoid the violation. *See* Tex.Rev.Civ.Stat.Ann. art. 5069–8.01(f) (Vernon 1987). We overrule point two.

■ By point four, Torres asserts that the trial court erred in granting summary judgment because appellees did not show, as a matter of law, that Larry Hyden was not liable since he was simply a lawyer representing his client.

The case of *Stacks v. East Dallas Clinic*[3] is instructive on this point. In that case, Stacks and his wife had incurred $652.90 in medical bills to the defendants, East Dallas Clinic and East Dallas Hospital. They had paid interest to the defendants in the amounts of $32.50, $32.79, and $81.61. The Clinic deposited these payments into its account and then wrote three checks to a third party for the same amounts. (The third party had worked out a plan with a bank to enable debtors to pay their bills.) Stacks could not pay his debt and sued the Clinic for usury. The issue on appeal was whether the defendants received a benefit from the usurious interest paid to them by Stacks, and which they, in turn, paid to a third party. The Texas Supreme Court stated:

> The Clinic *received* the interest from Stacks, and promptly remitted payment in an equal amount to [the third party]. The Clinic did not lend Stacks any money. The only benefit the Clinic received was the collection of its account from Stacks. A "benefit" from the interest refers to a direct benefit from the receipt and retention of the interest itself, and not to something so incidental as the collection of an account receivable, admitted due, as in this case.
>
> This Court will look through the form to the substance of a transaction; and the substance here bears out defendant's contention that it only collected the interest for another, and received no benefit from such interest itself.

---

**2.** 537 F.2d 871, 878 (7th Cir.1976), *aff'd on other grounds,* 576 F.2d 729 (7th Cir.1978), *cert. denied,* 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 699 (1978).

**3.** 409 S.W.2d 842 (Tex.1966).

*Stacks,* 409 S.W.2d at 845 (emphasis in original).

In this case, Hyden did not loan any money to Torres. The summary judgment proof showed that he was retained to collect the amount of the debt which Torres allegedly owed to Mid–State. He had sent the January letter to her solely in his capacity as an attorney for Jim Walter. Since Hyden was retained to collect the debt for another, he realized no benefit from the interest charged. *See Stacks,* 409 S.W.2d at 845. We hold that the trial court did not err in granting summary judgment favorable to Hyden on the ground that he was acting in his capacity as a lawyer representing a client. We overrule point four.

By point five, Torres asserts that the trial court erred in granting summary judgment and in signing a final judgment. She argues that appellees did not offer any evidence to negate the claim alleged in paragraph V of her original petition. That paragraph states: "Defendants' acts and/or omissions are the proximate and/or producing cause of Plaintiff's damages which are in excess of the minimum jurisdictional limits of this Court."

On appeal, Torres argues that this "cause of action" was separate from the Credit Code cause of action. In the former cause, she sought actual damages that appellees' acts and omissions caused her. In the Credit Code claim, she sought recovery of statutory penalties.

We disagree with Torres' contentions. Her alleged claim for actual damages was tied to appellees' demand for the $445,580.91. The summary judgment proof established appellees' defense of *bona fide* error. This defense prevented her from recovering actual damages against appellees. We overrule point five.

Due to our disposition of the above points of error, we need not address Torres' remaining points. *See* Tex.R.App.P. 90(a).

We AFFIRM the trial court's judgment.